JAMES D. WALLACE, Defendant in Error, *vs.* MABEL H. FOXWELL *et al.*—(THE SECOND NATIONAL BANK OF ST. PAUL, Plaintiff in Error.)

*Opinion filed June 20, 1911—Rehearing denied October 4, 1911.*

1. TRUSTS—*when power cannot be executed by surviving trustee.* Where the power conferred upon trustees is a mere naked power or rests in personal confidence in the trustees it cannot be executed by the surviving trustee alone.

2. SAME—*nature of power conferred by will depends upon the intention of the testator.* The nature of a power conferred upon trustees by a will is to be determined from a consideration of the purpose and intent of the testator appearing from an examination of the entire will.

3. SAME—*what indicates that testator did not intend to limit execution of powers to the trustees named.* The fact that the will creating a trust confers upon the successors in trust the same powers conferred upon the named trustees and that the will does not name such successors or prescribe how they shall be appointed, indicates that it was not the intention of the testator to limit the execution of the powers to the trustees named, particularly where the powers conferred are those attaching to the office of a trustee rather than those conferred by reason of personal confidence.

4. SAME—*a survivor may execute a power coupled with an interest.* Although discretionary power is vested in two or more persons as trustees, if the power is coupled with an interest the interest survives upon the death of one trustee, and the power also survives and may be executed by the survivor or survivors.

5. SAME—*when power of trustee is coupled with an interest.* Where the legal title to real and personal property is vested in trustees, with power to sell and convey, invest the proceeds, manage the estate and pay the income to persons designated, there is a power coupled with an interest, and in such case the surviving trustee takes the estate with the duty annexed to the power and may execute the power.

6. WILLS—*courts will consider will in light of facts surrounding testator.* In construing a will courts will endeavor to read its provisions in the sense intended by the testator, and for that purpose will consider the will in the light of the facts and circumstances surrounding the testator at the time the will was made.

7. SAME—*what is not necessary to creation of spendthrift trust.* To constitute a valid spendthrift trust it is not necessary that the

will shall specifically provide that the income shall not be subject to the debts of the *cestui que trust,* and it is sufficient if the will, considered in the light of the facts and circumstances, discloses an intention on the part of the testator to provide for the support of his child and secure the fund against his improvidence.

8. SAME—*law does not prohibit creation of a spendthrift trust.* The rule that the law favors the vesting of estates cannot be permitted to defeat the intention of the testator to the contrary, and if it is clear that the testator intended to create a spendthrift trust it is the duty of the courts to give effect to such intention.

9. SAME—*what circumstances indicate an intention to create a spendthrift trust.* The facts that the testator, in dividing his estate, made a distinction between his daughter and his son, directing the trustees to pay her share of the income to her alone, whereas they were authorized to pay the son's share to him or his wife in such proportions as they deemed best, and that they were given discretion to convey one-half of the estate to the son if they deemed advisable, indicate an intention to create a spendthrift trust in favor of the son, who at the time the will was made was married and had one child, had been unsuccessful in business and was indebted in a large sum.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

Defendant in error, James D. Wallace, as trustee, filed a bill in the superior court of Cook county, at the November term, 1909, to construe the last will and testament of Samuel G. Spaulding, deceased. The bill alleged that Samuel G. Spaulding departed this life on or about the 5th day of September, 1893, leaving a last will and testament, as follows:

"I, Samuel G. Spaulding, of the city of Chicago, in the county of Cook and State of Illinois, being of sound mind and memory, do make and declare this my last will and testament, hereby revoking all former wills by me made.

"I will that all my just debts and funeral expenses be paid.

"I give, devise and bequeath unto Clarence W. Marks and James D. Wallace, and to their successors in trust, all my estate, both real, personal and mixed, of whatever kind and wherever situate, to be held by them in trust for the uses and purposes hereinafter named and designated, in trust:

"*First*—To enter upon any and all my real estate, to collect the rents and profits and to have the entire management and control of the same; to reduce to possession, to receive and collect any and all bonds, notes, money, mortgages, stocks and other evidence of indebtedness due me, with the interest on the same; to convert the same into cash, at their discretion; to re-invest and re-sell the same in such manner as may seem best to them, but not to invest the same upon mere personal security or upon second mortgage security; to sell and convey, by good and sufficient deed, any and all my real estate; to re-invest and re-sell the proceeds of such sale, but not to invest the same upon mere personal security, but upon first mortgage security on real estate, or in stocks or bonds, or in real estate, as may seem best to them.

"*Second*—To pay over to my wife, Marcia I. Spaulding, the entire net income of my estate during her lifetime.

"*Third*—Upon the decease of my said wife, Marcia I. Spaulding, to pay over to my daughter, Mabel H. Foxwell, one-half of the net income of my estate during her lifetime, and upon the decease of my said daughter, Mabel H. Foxwell, to convey one-half of my estate to the right heirs of my said daughter.

"*Fourth*—Upon the decease of my said wife, Marcia I. Spaulding, to pay over to my son, Howard H. Spaulding, and to his wife, Florence B. Spaulding, one-half of the net income of my estate in such proportions as they may see fit, paying more or less to the one or the other, as they may deem best, during the lifetime of my son, Howard H. Spaulding, and upon the decease of my said son, Howard H. Spaulding, to convey one-half of my estate to the right heirs of my son, Howard H. Spaulding.

"*Fifth*—To convey to my son, Howard H. Spaulding, after the decease of my wife, Marcia I. Spaulding, one-half of my estate at such time as may seem best for them to do so.

"I hereby appoint Clarence W. Marks and James D. Wallace executors of this my last will and testament, and request that no bond be required of them for the faithful performance of their duties as such executors.

"In witness whereof I have hereunto set my hand this seventh day of August, A. D. 1893.    SAMUEL G. SPAULDING."

The bill alleged that said will was admitted to probate and letters testamentary issued to complainant and Clarence W. Marks, as executors; that the said executors duly qualified and entered upon the discharge of their duties; that afterwards said Clarence W. Marks refused to act as trustee under said will, and on December 1, 1896, by decree of the circuit court of Cook county, Marcia I. Spauld-

ing, the widow of testator, was appointed a co-trustee to act with the complainant, with full power and authority to carry out the terms and provisions of said will, as successor to said Clarence W. Marks. The bill alleged that on December 11, 1896, complainant and Clarence W. Marks filed their final report and account as executors, which were duly approved and said executors discharged; that upon the discharge of said executors complainant and Marcia I. Spaulding took charge of the estate and acted as trustees under said will until on or about the 26th day of March, 1909, when the said Marcia I. Spaulding died, since which time complainant has acted, and continues to act, as the sole surviving trustee under said will. The bill alleged that complainant has collected the rents under said trusteeship, has invested the same, and has accounted to and paid over the income to the said Marcia I. Spaulding during her lifetime; that since the death of said Marcia I. Spaulding complainant has accounted to Mabel H. Foxwell for one-half of the net income from said estate and that he has elected to pay to Florence B. Spaulding the other half of the net income. The bill further alleged that on the 19th day of April, 1899, the said Howard H. Spaulding filed his petition in bankruptcy in the United States District Court for the Northern District of Illinois; that he was adjudged a bankrupt and on July 26, 1899, was discharged as such; that in the schedule filed in the bankruptcy proceedings the provisions of the will of Samuel G. Spaulding, deceased, concerning the interest of said Howard H. Spaulding, were set out, followed by the statement, "Petitioner is advised that he has no interest in the trust estate or any part thereof." The bill alleged that the State Bank of Chicago was appointed trustee in bankruptcy, and filed a petition to sell all the right, title and interest of said Howard H. Spaulding under and by virtue of said will, and that said sale was made and confirmed; that S. R. Flynn purchased the interest of Howard H. Spaulding under said will and afterwards con-

veyed the same to the Second National Bank of St. Paul. The bill further alleged that said Samuel G. Spaulding left surviving him his widow, Marcia I. Spaulding, (now· deceased,) his son, Howard H. Spaulding, and his daughter, Mabel H. Foxwell, as his only heirs-at-law; that the said Mabel H. Foxwell is a widow and has one child, Frances Foxwell; that said Howard H. Spaulding and his wife, Florence B. Spaulding, have two children, Lester Carter Spaulding and Howard Henry Spaulding, Jr., both minors; that the said Marcia I. Spaulding died March 26, 1909, and that Howard H. Spaulding has been appointed executor of her estate. The bill alleged that the Second National Bank of St. Paul claims an interest in said estate, and prays that the will may be construed and the interests and rights of the various parties in and to said estate be determined and that said trustee be directed concerning his rights, powers and duties in the premises.

The answer of Mabel H. and Frances Foxwell admits all the allegations of the bill but denies that there is any necessity for construing the will and denies that they should be charged with any costs and attorneys' fees.

The answer of the Second National Bank of St. Paul sets forth the proceedings in bankruptcy, the sale of the interest of Howard H. Spaulding in said estate, the purchase by S. R. Flynn and the transfer of the same by Flynn to the Second National Bank of St. Paul. The answer neither admits nor denies that the complainant has elected to pay over to Florence B. Spaulding one-half the net income of the estate of Samuel G. Spaulding, deceased, since the death of Marcia I. Spaulding, but denies that he has the power to make such election under the provisions of the will. The answer sets up that by virtue of the fifth clause of said will, immediately upon the death of the testator there vested in said Howard H. Spaulding an equitable estate in fee of one-half of all the residue of the real and personal estate of the said testator, subject only to the

equitable life estate of Marcia I. Spaulding, and that anything in the fourth clause conflicting with that interpretation is void; that by virtue of the bankruptcy proceedings and sale and conveyance said bank now is the sole owner of all the right, title and interest which passed to the said Howard H. Spaulding under and by virtue of said will.

The answer of Howard H. Spaulding, individually and as executor of the last will and testament of Marcia I. Spaulding, and of Florence B. Spaulding, admits substantially all the allegations of the bill but denies that it is necessary to construe the will, and further denies that the Second National Bank of St. Paul has any right, title or interest in or to the estate of Samuel G. Spaulding, deceased, or any part thereof.

A formal answer was filed by James H. Wilkerson, who was appointed guardian *ad litem* of Lester Carter Spaulding and Howard Henry Spaulding, Jr., minors.

A hearing was had upon the bill, answers and replications, and a decree was entered July 14, 1910, finding that James D. Wallace is now, and has been for a long time past, the duly authorized and acting trustee under said will of Samuel G. Spaulding, deceased, and that he has full authority to execute the powers conferred by the will; that the title to the property held in trust for the benefit of Howard vested in the trustees; that the provision made for said Howard was intended by the testator as, and is in law, a spendthrift trust; that neither Howard nor plaintiff in error has, or ever had, any vested interest in the property in the hands of the trustee, and that no right or estate therein passed to the trustee in bankruptcy or to the purchaser at the bankrupt sale or to plaintiff in error. The decree also found that there is no repugnancy between the fourth and fifth paragraphs of the will. To reverse this decree a writ of error has been sued out of this court by the Second National Bank of St. Paul.

ROSENTHAL & HAMILL, (CHARLES H. HAMILL, and NICHOLAS R. JONES, of counsel,) for plaintiff in error.

PAUL BROWN, and WILLIAM H. GRUVER, for defendant in error.

TENNEY, COFFEEN, HARDING & SHERMAN, for Howard H. Spaulding *et al.;* WILKERSON & CASSELS, for Lester C. Spaulding and Howard H. Spaulding, minors, and James H. Wilkerson, guardian *ad litem.*

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error has furnished us with an elaborate and learned brief and argument in support of the proposition that the discretionary power conferred by the will upon the trustees indicated personal confidence in the donees and the power could not be exercised by one of the trustees alone, and that upon the death of one of the trustees the power lapsed. It is also contended by plaintiff in error that, considering the fourth paragraph of the will separately, Howard took an equitable freehold estate, and the fee being limited to his heirs, the rule in *Shelley's case* applies, and Howard took an equitable remainder in fee in the real estate and an equitable estate in one-half the personalty during his life, with remainder in fee in the personalty to such persons as shall be Howard's heirs at the time of his death. It is further contended that, considering the fifth paragraph independently of the fourth, it vests in Howard a remainder in fee, and if the fourth paragraph cannot be given the construction contended for, then the fourth and fifth paragraphs are repugnant and the fifth must prevail, and (assuming the power of the trustees to appoint having lapsed) plaintiff in error having succeeded to Howard's rights, is entitled to a conveyance of one-half of the estate, both real and personal.

Under the construction we place upon the will it will be unnecessary to pass upon all the questions raised growing out of other possible constructions of that instrument. We will first consider the contention that one of the trustees having declined to accept the trust, and having since died, the power conferred did not vest in the survivor but lapsed.

If the power was a mere naked power or rested in personal confidence in the donees, then, according to the authorities, it could not be executed by a survivor. The nature of the power is to be determined from a consideration of the purpose and intent of the testator appearing from an examination of the entire will. While certain discretionary powers were conferred upon the trustees, it does not appear to have been the intention of the testator to limit the execution of the powers to the persons named as trustees, for the will confers the same powers upon their successors in trust. Who should be successors and how such successors should be appointed is not provided for in the will. The reasonable inference, we think, is, that the testator had in mind the possible death of one or both of the trustees named in the will before the trusts were terminated, and intended, in the event of the death of both, that the successor named should have authority to execute the powers conferred. The powers conferred were powers attaching to the office of trustees rather than powers conferred in personal confidence in the donees. Furthermore, the power given by the will is not a mere naked power but is a power coupled with an interest, and the rule in such cases is, that although discretionary power is vested in two or more persons as trustees, if the power is coupled with an interest the interest survives, and therefore the power survives and may be executed by the survivor. The legal title vested in the trustees with power to sell and convey, invest the proceeds, manage the estate and pay the income to the persons designated. The power was therefore coupled

with an interest. (*White* v. *Glover,* 59 Ill. 459; *Peter* v. *Beverly,* 10 Pet. 532; *Osgood* v. *Franklin,* 2 Johns. Ch. 1; 7 Am. Dec. 513.) · In such cases a surviving trustee takes the estate with the duty annexed to the power and may execute the power. (Perry on Trusts,—6th ed.—sec. 505; Lewin on Trusts,—11th ed.—pp. 746, 747; *Peter* v. *Beverly, supra; Lorings* v. *Marsh,* 6 Wall. 337.) *French* v. *Northern Trust Co.* 197 Ill. 30, is not in conflict with this view.

If the decree of the chancellor is correct that it was the intention of the testator to, and that his will does, create a spendthrift trust in favor of Howard and his family, it follows that no estate vested in Howard and the rule in other cases has no application. It is very ably contended by plaintiff in error that the decree in this respect is erroneous.

Whatever of hostility there may be on the part of some courts to spendthrift trusts, their validity has been repeatedly approved by this and many other courts. The oft-repeated cardinal rule that it is the intention of the testator that must govern in the construction of a will, and in determining the intention the whole will and all its provisions must be considered and given effect, if possible, does not require the citation of authority. It is also a familiar rule that in the construction of wills courts will endeavor to read their provisions in the sense intended by the testator, and for that purpose the court may consider a will in the light of the facts and circumstances surrounding the testator at the time the will was made. (*Perry* v. *Bowman,* 151 Ill. 25; *Wallace* v. *Noland,* 246 id. 535.) Construing this will in the light of these rules, we are of the opinion the decree of the chancellor is correct.

The proof shows the will was executed in August, 1893, and the testator died in September following. At the time the will was executed, and at the time of his death, the testator owned real estate of the value of $52,000 and personal property of the value of $93,000. He left surviving

him his widow, Marcia I. Spaulding, a daughter, Mabel H. Foxwell, and a son, Howard H. Spaulding, as his only heirs-at-law. At the time the will was executed Howard was twenty-nine years old, was married and had one child. He had been unsuccessful in business, was indebted in the sum of $48,000, upon a part of which judgment had been rendered against him in the circuit court of Cook county. All these things were known to the testator when he executed his will. He devised to the trustees named, and to their successors in trust, his entire estate, real and personal, with power to sell and convey the real estate, collect the rents and profits, to collect and reduce to possession all moneys owing to the testator, to re-invest the same and pay to the widow the entire net income during her life. Upon her death one-half the net income was directed to be paid to Mabel H. Foxwell during her life, and upon her death one-half of the estate was to be conveyed to her "right heirs." By the fourth paragraph, after the death of the widow one-half the net income from the estate was directed to be paid to Howard and his wife, Florence, "in such proportions as they [the trustees] may see fit, paying more or less to the one or the other, as they may deem best, during the lifetime of my son, Howard H. Spaulding, and upon the decease of my said son, Howard H. Spaulding, to convey one-half of my estate to the right heirs of my son, Howard H. Spaulding." The fifth paragraph is as follows: "To convey to my son, Howard H. Spaulding, after the decease of my wife, Marcia I. Spaulding, one-half of my estate at such time as may seem best for them to do so."

We are of opinion that, properly read and construed, there is no repugnancy in the will. No particular significance is to be attached to the numbering of paragraphs 4 and 5. The evident meaning and purpose of the testator was to provide for the payment of the income from one-half of his estate, after the death of his widow, to Howard and wife until the death of Howard, with authority in

the trustees to terminate the trust by conveying the estate to Howard during his lifetime, if the trustees thought it best to do so. If it was thought unwise to make the conveyance to Howard the trustees could retain the property and pay the income to Howard and his wife in such proportions as they deemed best to carry out the purpose of the testator until Howard's death. For some reason the testator saw fit to make a distinction between the devise for the daughter's benefit and that for the benefit of the son. In the provision made for the son's benefit he was given the right to no definite portion of the income, but it was left to the trustees to determine whether he should receive the greater part or half the income, or whether it should substantially all be paid to his wife. The proof shows the trustee elected to pay the entire income to the wife of Howard. The reason for the difference in the provisions made for the daughter and the son is not set out in the will itself, but, as we have seen, we are not confined to the written words of the will, alone, in determining the intention of the testator. Considering, in connection with the will, the financial condition of Howard, which was known to his father, and the fact that Howard was a married man twenty-nine years old and then had one child, we find reasons why the testator might have desired to conserve the property by placing it beyond the reach of Howard's creditors and leaving it so his family might receive the income from it. The language used in the will is apt language to effect that purpose and such purpose is not prohibited by any rule of law. It appears to us there is no escape from the conclusion that for reasons personal to Howard the testator intended that no estate should vest in him, and such intention will be given effect. (*Dee* v. *Dee,* 212 Ill. 338; *Armstrong* v. *Barber,* 239 id. 389.) True, the law favors the vesting of estates, but this rule will not be permitted to defeat the intention of the testator. To constitute a valid spendthrift trust it is not necessary that the will should specifically provide that

the income shall not be subject to the payment of the debts and liabilities of the *cestui que trust.* It is sufficient if the will, considered as a whole and viewed in the light of the circumstances under which it was made, discloses an intention on the part of the testator to provide for the support and maintenance of his child and to secure the fund against his improvidence. The testator had a legal right to dispose of his property in this manner if he desired to do so, and if such was his intention, as appears from the will, it is the duty of the court to give effect to such intention.

The validity of a spendthrift trust was before this court the first time in *Steib* v. *Whitehead,* 111 Ill. 247. In that case the court referred to conflicting authorities upon the subject, and decided to follow those holding valid, provisions giving, through a trustee, the net income from property to a child of a testator and at the same time placing it beyond the control of the beneficiary's creditors. The court said that view was in accordance with its convictions of right and a sound public policy.

In *Bennett* v. *Bennett,* 217 Ill. 434, there was a bequest of $3000 to a trustee to invest and pay the interest semi-annually to the testator's son until he was forty years old, at which time, if the testator's widow was living, the said $3000 was to be paid to and become the property of the son absolutely, but if the widow was not then living, the trustee was to retain the principal sum and continue to pay the interest to the son until he was fifty years old, at which time the $3000 was to be paid to him if living, and in case of the son's death before payment to him of said principal sum it was to go to his heirs. The court held no title to the $3000 vested in the son of the testator until the period arrived at which the trustee was to pay it to him, and said (p. 442) : "In determining the character of the trust here created, whether a spendthrift trust or not, we may look to the provisions of the will and the condition of the parties as disclosed by the bill. (*Kaufman* v. *Breckinridge,* 117

Ill. 305.) It is usual in such trusts to find a provision against alienation of the trust fund by the voluntary act of the beneficiary or *in invitum* by his creditors. 'It is not necessary that an instrument creating a spendthrift trust should contain an expressed declaration that the interest of the *cestui que trust* in the trust estate shall be beyond the reach of his creditors, provided such appears to be the clear intention of the testator or donor as gathered from all parts of the instrument construed together in the light of the circumstances.' (26 Am. & Eng. Ency. of Law,—2d ed.— p. 141; *Stambaugh's Estate*, 135 Pa. St. 585; *Appeal of Grothe*, 19 Atl. Rep. 1058; *Baker v. Brown*, 146 Mass. 369; 15 N. E. Rep. 783; *Patten* v. *Herring*, 29 S. W. Rep. 388.) The fact that a trustee was appointed and vested with the estate and the beneficiary was given the income, only, is a circumstance from which the intention of the testator to create a spendthrift trust may be inferred.— *Stambaugh's Estate, supra.*"

In *Wagner* v. *Wagner*, 244 Ill. 101, the subject of spendthrift trusts was again considered, and the court, on page 111, quoted with approval from the American and English Encyclopedia of Law, (vol. 26, p. 138) : " 'Spendthrift trust' is the term commonly applied to those trusts that are created with a view of providing a fund for the maintenance of another and at the same time securing it against his own improvidence or incapacity, for self-protection. The provisions against alienation of the trust fund by the voluntary act of the beneficiary, or *in invitum* by his creditors, are the usual incidents of such trusts." And further said: "Such trusts are now generally recognized as valid by the courts of this country, and have been sustained by this court in *Steib* v. *Whitehead*, 111 Ill. 247, *Bennett* v. *Bennett*, 217 id. 434, *King* v. *King*, 168 id. 273, and *Chapman* v. *Cheney*, 191 id. 574. To create a valid spendthrift trust it is not necessary that the *cestui que trust* should be denominated a spendthrift in the will or that the

testator should give his reasons for the creation of it, nor is it necessary that the will shall in express terms contain all the restrictions and qualifications incident to such trusts. If, upon a consideration of the will, it appears the intention of the testator was to create such a trust, effect will be given to that intention.—*Baker* v. *Brown,* 146 Mass. 369; *Bennett* v. *Bennett, supra.*"

In our opinion the provisions of the will for Howard's benefit were intended to, and did, constitute a spendthrift trust within the meaning of the law as held in the decisions above referred to. It necessarily follows, therefore, that plaintiff in error acquired no title by virtue of the bankruptcy sale, and the decree of the superior court is affirmed.

*Decree affirmed.*