# CRONQUIST et ux. v. UTAH STATE AGR. COLLEGE

No. 7197. Decided January 4, 1949. (201 P. 2d 280.)

See 65 C. J., Trusts, sec. 47; 54 Am. Jur. 123. Validity of spendthrift trusts, note, 138 A. L. R. 277.

*L. E. Nelson,* of Logan, for appellants.

*L. Tom Perry,* of Logan, *Grover A. Giles,* Atty. Gen., and *S. D. Huffaker,* Asst. Atty. Gen., for respondent.

WOLFE, Justice.

Appeal by the plaintiffs from a judgment for defendant in an action by plaintiffs to have declared null and void a certain contract made between plaintiffs and defendant, and a quitclaim deed to certain land executed by plaintiffs to defendant. The court also granted judgment to defendant on its counterclaim for specific performance of the afore-mentioned contract.

Plaintiffs are husband and wife. The land involved in this controversy will be referred to as the College farm. The facts are substantially without dispute, and insofar as material here are as follows:

Olif Cronquist, father of the plaintiff Heber Cronquist, died testate on April 27, 1927, leaving a substantial estate of real and personal property of a total value of about $125,-000. The greater part of the estate was left to the three surviving children of the testator, one of whom was plaintiff, Heber Cronquist. By the terms of the will and the decree of distribution, each child received about $30,000 worth of property immediately upon entry of the decree of distribution. The balance of the estate, including the College farm, was by the terms of the will left to the Cache Valley Banking Company as trustee, to hold in trust for twenty years. The decree of distribution in regard to the trust estate, followed the exact words of the will, as follows:

" 'To Cache Valley Banking Company, a corporation, in trust, the following described property [Then follows description of the property so distributed in trust.]

" 'Said lands and water stock to be held by said Cache Valley Banking Company, in trust, for twenty years, said Banking Company to

have power to rent said premises and operate the same and pay one-third of rents, issues, profits, after deducting all necessary and proper expenses, to each of the three children of said decedent, namely, Heber Cronquist, Elam Cronquist and Margaret Hoffman, or to the heirs of law of each of them, per stirpes and not per capita, and at the expiration of said twenty years the said Cache Valley Banking Company to convey said premises and water stock to the three children of said decedent above mentioned, share and share alike, or to the heirs at law, per stirpes and not per capita.' "

At the time of the testator's death, the College farm was under lease to defendant, and it appears that the officers of the defendant were aware of the trust arrangements.

On November 9, 1944, before the termination of the trust estate, plaintiffs and defendant entered into an agreement whereby plaintiffs agreed to sell to defendant plaintiffs' undivided one-third interest in the College farm, for $10,000, and at the same time plaintiffs executed a quitclaim deed to the land, which deed was deposited with L. W. Hovey, trust officer of the trustee banking company, for delivery to defendant upon approval of the agreement by defendant's Board of Trustees. The quitclaim deed was later delivered to defendant, and was filed for record on November 20, 1944.

The trustee continued to hold the land in trust, and to administer it in accordance with the provisions of the trust instrument until July 19, 1947, on which date, by decree of the district court, the trust was terminated and the trust assets conveyed to the beneficiaries.

Plaintiffs commenced this action to have their contract with, and deed to defendant declared null and void. Defendant counterclaimed (by a pleading erroneously denominated a cross-complaint), praying for specific performance of the contract and that title to an undivided one-third of the lands in question be quieted in it. By its decree, the lower court denied to plaintiffs the relief prayed for, and granted to defendant the relief prayed for by it.

Plaintiffs have, by their assignments of error, attacked numerous rulings of the court, especially the findings of fact, conclusions of law, and the decree. However, there is only one substantial question involved, and that is whether the testamentary trust created by the will of Olif Cronquist was what is known as a spendthrift trust. Plaintiffs urgently contend that the trust was a spendthrift trust, that therefore plaintiff could not anticipate his interest therein, nor could he alienae it in the fashion attempted to be done here. Defendant insists that the trust was not a spendthrift trust, and that the contract and deed executed by plaintiffs are in all respects binding.

The question here involved is a matter of first impression in this court. No prior decisions of this court have dealt with the problem of spendthrift trusts, and there are no statutes in this state either to control or to guide our decision. Griswald on Spendthrift Trusts 270, Sec. 225. Not only are there no precedents as to what is necessary to create a spendthrift trust, or what the effect of a spendthrift trust shall be; it is still an open question in this state as to whether a spendthrift trust is valid at all. However, the questions here presented are not novel to American jurisprudence, and the courts of our sister jurisdictions have rendered numerous decisions treating the general questions here involved. Moreover, there is an abundance of text material by competent authors treating of the same general subjects. We turn to these authorities for assistance in determining the case at bar. We note here that counsel for both sides have been extraordinarily diligent in research and citing to us helpful discussions from the literature of the law.

We shall treat first the question of whether a spendthrift trust was created, or intended to be created, by the testator; and for purposes of this discussion we shall assume the validity of spendthrift trusts in this state.

The term "spendthrift trust" is not a felicitous one, and its use has been criticized by both courts and text writers.

Although the term is not descriptively accurate, since it is well settled that the beneficiary need not be a spendthrift, nor an incompetent, but may indeed be a very astute business man, it has come to have a well-recognized meaning in Anglo-American jurisprudence. In general, a spendthrift trust is one in which the beneficiary is prohibited from anticipating or assigning his interest in or income from the trust estate. A definiton frequently quoted in the older cases, is the one contained in 26 American and English Ency. of Law, 2d Ed., 138 which is as follows:

" 'Spendthrift Trust' is the term commonly applied to those trusts that are created with a view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self protection. The provisions against alienation of the trust fund by the voluntary act of the beneficiary, or in invitum by his creditors, are the usual incidents of such trusts."

For other definitions see 1 Bogert on Trusts and Trustees, pp. 597-598, Sec. 207, and pp. 715-718, Sec. 222; 65 C. J. 230, Trusts, Sec. 20; and 54 Am. Jur. 123, Trusts, Sec. 148,

No particular language need be employed by the settlor in creating a spendthrift trust. All that is necessary is that his intent to create such a trust be clearly shown. It is not necessary that the trust be denominated a spendthrift trust, or that specific restraints on alienation and anticipation be expressed, so long as the settlor's intent is manifest. As to this proposition there is little dispute between the parties. Defendant concedes the rule. See 54 Am. Jur. 124, Trusts, Sec. 150; *Jones* v. *Harrison*, 8 Cir., 7 F. 2d 461; *Mohler* v. *Wesner*, 382 Ill. 225, 47 N. E. 2d 64; 1 Underhill on the Law of Wills 695, Sec. 529; and *Nunn* v. *Titche-Goettinger Co.*, Tex. Com. App. 245 S. W. 421. The serious question is as to whether the language employed by the testator in this case indicates with sufficient clarity and intent to create a spendthrift trust.

Plaintiffs have cited to us a number of cases involving facts somewhat similar to those in the case at bar, where

it has been held that a spendthrift trust was created. *Seymour* v. *McAvoy,* 121 Cal. 438, 53 P. 948, 41 L. R. A. 544; *Fletcher* v. *Los Angeles Trust & Sav. Bank,* 182 Cal. 177, 187 P. 425; *In re De Lano's Estate,* 62 Cal. App. 2d 808, 145 P. 2d 672; *Everitt* v. *Haskins,* 102 Kan. 546, 171 P. 632; *Meek* v. *Briggs,* 87 Iowa 610, 54 N. W. 456, 43 Am. St. Rep. 410; *Bennett* v. *Bennett,* 217 Ill. 434, 75 N. E. 339, 4 L. R. A., N. S., 470; *Wagner* v. *Wagner,* 244 Ill. 101, 91 N. E. 66, 18 Ann. Cas. 490; *Wallace* v. *Foxwell,* 250 Ill. 616, 95 N. E. 985, 50 L. R. A., N. S., 632; *In re Stambaugh's Estate,* 135 Pa. 585, 19 A. 1058; *Town of Shrewsbury* v. *Bucklin,* 105 Vt. 188, 163 A. 628, 86 A. L. R. 133; and *Jones* v. *Harrison,* 8 Cir., 7 F. 2d 461.

We have carefully examined all of the above cited authorities. No useful purpose could be accomplished by an extended discussion or detailed analysis. It may be observed generally that with one or two exceptions, those cases are quite old, and do not represent the modern trend of authority. None of them are identical to the case at bar. In all of them, there were additional factors tending to an inference that the settlor intended a spendthrift trust. The early Illinois cases *Bennett* v. *Bennett; Wagner* v. *Wagner;* and *Wallace* v. *Foxwell)* are to a large exent negated by the later decisions of the Illinois court. In *Mohler* v. *Wesner,* 382 Ill. 225, 47 N. E. 2d 64, 66, on facts not dissimilar from those in the case at bar, it was held that no spendthrift trust was created, the court saying that

"* * * it is unnecessary to the creation of a spendthrift trust that the cestui que trust be denominated a spendthrift or that the testator assign his reasons for creating the trust, or that he will contain all restrictions and qualifications incident to the trust. On the other hand, it is usual in such trusts to find provision against alienation of the trust fund by the voluntary act of the beneficiary, or in invitum by his creditors. * * * Here, the will contains no expression, express or implied, to the effect that the trust created is a spendthrift trust. In the absence of specific language declaring the trust a spendthrift trust or language from which such an intent might reasonably be inferred, there is no basis for the contention that the

testatrix created or intended to create a spendthrift trust." See also *Blair* v. *Linn*, 274 Ill. App. 23.

Likewise the force of the early case of *In re Stambough's Estate*, has largely been dissipated by later decisions of the Pennsylvania court. See *Trask* v. *Shaffer*, 140 Pa. Super 505, 14 A. 2d 211 and Griswold on Spendthrift Trusts, pp. 302-3, 307-9, Sections 264, 268-270.

In all of the California cases cited by plaintiffs, the trust instrument pointed much more clearly to an intent to create a spendthrift trust than does the will in the case at bar.

Without attempting to further elucidate upon plaintiffs' authorities, it may be summarily stated that they are not persuasive toward a holding in this case that the testator intended to creat a spendthrift trust. ■

There is nothing in the language used by the settlor to indicate that a spendthrift trust was intended. Certainly there is no express language to that effect. Nor did the testator employ the word "directly" or any other word to indicate that payment of income should be exclusively and solely to the beneficiary and not to assignees, creditors, or other third persons; nor that the trust is for the support, maintenance, or education of the beneficiaries; nor that the beneficiaries may not alienate the interest; nor that trustee should pay such portion of the income or corpus to the beneficiaries as it, in its discretion, should deem wise; nor any other provision such as courts have from time to time held to show an intent to create a spendthrift trust. As was said in *Trask* v. *Shaffer*, 140 Pa. Super. 505, 14 A. 2d 211, 213:

"if the trust in question is to be construed as a spendthrift trust, it is difficult to conceive of one that is not."

The language of the trust instrument wholly fails to reveal any language by which an intent to create a spendthrift trust could be implied.

Every trust is not a spendthrift trust and ■

"there is a presumption against the creation of a spendthrift trust unless either words to that effect are set forth, or a clear and undoubted intention to the same end is manifested by the terms of the instrument." 65 C. J. 542, Trusts, Sec. 290.

See also Kales, Estates Future Interests 861, Sec. 742, quoted with approval in *Pool* v. *Cross County Bank,* 199 Ark. 144, 133 S. W. 2d 19, 22 :

"A mere trusteeship, even though it is for the protection of the beneficiaries, ought not, as a matter of taste, if for no other reason, to be called a 'spendthrift trust.' Only where there is added to the trusteeship express restraints on alienation is it justifiable to call the creation a spendthrift trust."

The modern and better view is well expressed in *Nunn* v. *Titche-Goettinger Co.,* Tex. Com. App., 245 S. W. 421, 422 :

"It is not necessary * * * that the instrument creating a spendthrift trust should contain an express declaration that the interest of the beneficiary shall not be transferred, assigned, or subjected to the payment of his debts provided such appears to be the clear intention of the donor or testator, as gathered from all the parts of the instrument construed together in the light of attending circumstances. * * *

"There must, however, be something in the face of the instrument indicating such a purpose on the part of the donor or testator. * * *

"According to the great weight of authority, * * * where the instrument creating the trust contains no express words of restraint and nothing in (sic) on its face declaring that the purpose thereof is to provide a support for the beneficiary and to furnish him with the comforts of life, and where it requires that the revenue arising from such trust shall be paid directly to the beneficiary without any direction concerning its application and without any discretion being vested in the trustee as to the time or amount of such payments or the purpose to which they shall be applied, such revenue may be anticipated, or assigned by the beneficiary or by proper proceedings subjected to the payment of his debts.
* * * * *

"The restraints imposed by a spendthrift trust generally hamper the beneficiary in the free use and enjoyment of the income therefrom and are necessarily humiliating to such beneficiary. A trust should not be construed to belong to that class unless it appears reasonably clear that such was the purpose of the donor or testator."

The foregoing discussion is well summarized by Griswold as follows:

"It is established in the cases, and quite rightly, that where spendthrift trusts are valid no particular form of words is required to create such a trust. Courts have occasionally held that trusts were spendthrift trusts when it was exceedingly difficult if not impossible to find any indication in the terms of the trust that the settlor intended any such limitation on the interest of the beneficiary. These cases deserve no following. The intention to establish a spendthrift trust ought clearly to appear in the instrument creating the trust, for, as more than one court has observed, any other rule would be in effect saying that all life estates of like character, given in trust, are incapable of being alienated. 'There should be specific language declaring the trust a spendthrift trust or language from which such an interest might reasonably be inferred.' A mere trusteeship is not enough to make a spendthrift trust." Griswold on Spendthrift Trusts 302-304, Sec. 264.

This opinion is not to be construed as a holding by implication that spendthrift trusts are valid in Utah to any extent. As to that question, we express no opinion. It must await an occasion where a spendthrift trust was intended to be created. The holding here is limited to the specific issue that there is nothing in the trust instrument to indicate an intent on the part of the settlor to create a spendthrift trust, or a trust having any of the incidents and restrictions of a spendthrift trust.

The judgment of the trial court is affirmed. Costs to respondent.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WADE, J., concurs with the result.