In re Wesley G. HARLINE, Debtor.

David L. GLADWELL, Trustee,
Plaintiff–Appellee,

v.

Wesley G. HARLINE, Defendant–
Appellant.

No. 90–4157.

United States Court of Appeals,
Tenth Circuit.

Dec. 5, 1991.

Paul N. Cotro–Manes, Salt Lake City, Utah, for defendant-appellant.

Mona Lyman of McKay, Burton & Thurman, Salt Lake City, Utah, for plaintiff-appellee.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

This appeal involves in an unusual context an important legal issue—whether a beneficial interest in a profit sharing trust is part of a debtor's estate under 11 U.S.C. § 541 available to satisfy creditors' claims.[1]

Wesley G. Harline (Dr. Harline) filed a petition in bankruptcy for reorganization of his affairs under Chapter 11, which was later converted to a Chapter 7 proceeding. He did not list as an asset of his estate his beneficial interest in a profit sharing trust of the Weber Clinic, Inc. On discovering the existence of that interest bankruptcy trustee David L. Gladwell sued the trustee of the profit sharing trust, the Key Bank of Utah (bank trustee), to secure Dr. Harline's interest as an asset of the bankruptcy estate. Dr. Harline became an intervening defendant and carried the burden of the litigation.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

■ The bankruptcy court granted a summary judgment motion ordering the property to be turned over to the bankruptcy estate. On appeal the district court affirmed. Dr. Harline now seeks to obtain a determination that the profit sharing plan interest is not an asset of the estate under 11 U.S.C. § 541, either because (1) it is a valid spendthrift trust under Utah law or (2) it is exempt as a qualified Employee Retirement Income Security Act (ERISA) plan.[2]

The record in this case is not as fully developed as we would like. But it appears that Dr. Harline practiced medicine in association with other doctors, now deceased, doing business as the Weber Clinic. This clinic was unincorporated at the time the profit sharing trust was established in 1960, but was asserted to be an "association taxable as a corporation." Second Amendment to Weber Clinic Profit–Sharing Trust, Respondent's Ex.Add., tab 3 at 1. In 1971 the association was "transformed into a Utah professional corporation." *Id.* Thereafter the trust was operated as a corporate retirement plan. The record indicates that Weber Clinic, Inc. is still a professional corporation with Dr. Harline as the sole shareholder, the sole remaining beneficiary of the plan, and the sole member of its deferred compensation committee. It is unclear from the record whether the corporation has ceased making contributions to the plan.[3] The plan's sole remaining assets, held for Dr. Harline's account, are three insurance policies with cash values totalling more than $336,000.

Dr. Harline asserts that the plan is "qualified" under ERISA.

**I**

Section 541 of the Bankruptcy Code, 11 U.S.C. § 541, includes in the bankruptcy estate essentially all beneficial ownership interests of a debtor unless the interest contains "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under *applicable non-bankruptcy law.*" *Id.* § 541(c)(2) (emphasis added). A beneficial interest in an ordinary spendthrift trust would clearly qualify for the exemption if the state courts would hold that creditors could not reach the interest. *See Goff v. Taylor (In re Goff),* 706 F.2d 574, 581–82 (5th Cir.1983) (detailing legislative history). Several of the circuit courts that have considered § 541(c)(2)'s applicability to interests in ERISA qualified pension and profit sharing plans have declared they are excluded from the bankruptcy estate only if they qualify as valid spendthrift trusts under state law. *Daniel v. Security Pac. Nat'l Bank (In re Daniel),* 771 F.2d 1352, 1360 (9th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Lichstrahl v. Bankers Trust (In re Lichstrahl),* 750 F.2d 1488, 1490 (11th Cir.1985); *Samore v. Graham (In re Graham),* 726 F.2d 1268, 1273–74 (8th Cir.1984); *Goff,* 706 F.2d at 580. In the instant case, the bankruptcy and district courts accepted this reading of § 541(c)(2) and focused upon whether Utah would recognize spendthrift trusts (con-

**2.** Dr. Harline also argues that we must reverse because the insurance companies whose policies are the sole assets in the plan are necessary parties to this action. The district court ruled that Dr. Harline had not raised the issue before the bankruptcy court. But it found alternatively that they were not necessary parties, and we agree. The insurance policies are assets of the profit sharing trust to which title is held by the bank trustee. That trustee is a party to this action, and if the bankruptcy and district courts correctly found Dr. Harline's interest in the plan to be an asset subject to the claims of creditors, the bank trustee has the power and the duty to make the cash surrender value or the policies themselves available to the bankruptcy trustee. We also do not consider Dr. Harline's refund claim for post-petition insurance premium payments as that issue is not sufficiently developed

in the record. If, as Dr. Harline argues, he is not the settlor of the profit sharing trust but a mere employee beneficiary not entitled to benefits because he has not retired or terminated his employment, then he would not be a proper claimant since the post-petition contributions would have been made by his employer, the Weber Clinic, Inc.

**3.** Dr. Harline's brief in the district court states that "[t]he debtor-defendant had used his own funds, earned post petition to pay on the premiums due on several of the policies...." I R.Supp. tab 3 at 3. His brief in this court states that "Appellant had paid in post earned monies to keep the policies in force...." Appellant's Opening Brief at 26.

cluding that it would) and whether Dr. Harline's interest in the profit sharing trust qualified as a spendthrift trust (concluding that it did not). Both courts ruled that Dr. Harline's interest in the trust had to be included in his bankruptcy estate.

## A

Utah has never directly approved of the spendthrift trust. Dr. Harline has moved to certify this issue to the Utah Supreme Court. Following our review of the Utah cases that do address spendthrift trusts, we are satisfied that Utah would follow the vast majority of courts which recognize traditional state law spendthrift trusts and would adopt the views of those courts as to the characteristics required to create such a trust. Therefore, we deny the motion to certify this issue.

The Utah Supreme Court apparently first considered spendthrift trusts in *Cronquist v. Utah State Agricultural College,* 114 Utah 426, 201 P.2d 280 (1949). Looking to authority from other jurisdictions, the court discussed their characteristics and requirements. The court held that the trust before it was not a spendthrift trust because it contained none of the traditional spendthrift trust provisions and the language of the trust failed to indicate in any way that the settlor intended to create a spendthrift trust. *Id.* 201 P.2d at 284. The court then said, "[t]his opinion is not to be construed as a holding by implication that spendthrift trusts are valid in Utah to any extent. As to that question, we express no opinion. It must await an occasion where a spendthrift trust was intended to be created." *Id.* at 285.

Nonetheless, there are strong indications that Utah would recognize spendthrift trusts. For example, in *Leach v. Anderson,* 535 P.2d 1241 (Utah 1975), the Utah Supreme Court, in reviewing an alleged spendthrift trust that was invalidated as violating Utah Code Ann. § 25–1–11, which makes conveyances in trust for the use of the settlor void as to his existing or subsequent creditors, stated:

"It is not to be supposed that that statute was intended to limit or interfere with other traditional and beneficial uses of trusts. That a trustor can deal generally with his property as he desires we have no doubt; and this includes placing it in an irrevocable trust, beyond his own power to reclaim, or to sell or alienate it; and may include a so-called 'spendthrift trust' provision to safeguard against improvident dissipation thereof."

*Id.* at 1243. *See also Territorial Sav. & Loan Ass'n v. Baird,* 781 P.2d 452, 456–57 (Utah App.1989). Two Utah bankruptcy court decisions, *In re Martin,* 115 B.R. 311, 316 (Bankr.D.Utah 1990), and *In re Kerr,* 65 B.R. 739, 745 (Bankr.D.Utah 1986), conclude that Utah would follow the traditional view of spendthrift trusts. *Id.* at 316.

## B

"Traditionally, there are three requirements for a spendthrift trust: (1) the settlor may not be a beneficiary of the trust plan, (2) the trust must contain a clause barring any beneficiary from voluntarily or involuntarily transferring his interest in the trust, and (3) the debtor-beneficiary must have no present dominion or control over the trust corpus." *Williams v. Board of Pensions of the Church of God, Inc. (In re Tomer),* 117 B.R. 391, 394 (Bankr.S.D.Ill. 1990); *see Restatement (2d) Trusts* §§ 153, 156 (1959). The district court concluded that the Weber Clinic trust was not a spendthrift trust because it determined that the trust was self-settled and that, as the single member of the trust's deferred compensation committee and the sole shareholder of the corporation, Dr. Harline had "complete dominion" over the trust property, following *Lichstrahl,* 750 F.2d at 1490. I R. tab 5 at 7.

We agree with the district court that the trust, on the particular facts before us, does not qualify as a spendthrift trust. We need not decide the questions of whether Dr. Harline is the settlor either because the trust was established before the Weber Clinic was incorporated or because Utah would disregard the corporate entity. *See In re Velis,* 123 B.R. 497, 509 (D.N.J.1991) (court cannot disregard corporate entity simply because debtor is sole

shareholder). Like the *Lichstrahl* court, we believe Dr. Harline's power as the only officer, director, and shareholder of the Weber Clinic, Inc. to amend or terminate the plan is fatal to spendthrift status, particularly when he already is beyond the plan's normal retirement age and is sole member of the deferred compensation committee. Dr. Harline could take his interest in the plan without penalty and continue to practice medicine, either as a corporate employee or after dissolving the corporation. As we read the plan documents, although amendments have introduced ambiguities, Dr. Harline, having attained the age of fifty-five may request the committee (consisting of himself alone) to pay him his accumulated trust fund interest while continuing his employment. *See* The Weber Clinic Profit–Sharing Trust Agreement, Respondent's Ex.Add., tab 1 at 6; *see also id.* tab 2 at 1, 3, and tab 5 at 2.

## II

### A

Our conclusion that Utah state courts would not consider Dr. Harline's interest in the profit sharing trust as a valid spendthrift trust does not resolve the appeal. In his appellate brief Dr. Harline asks us to find "whether an ERISA qualified plan" is includable in his bankruptcy estate under 11 U.S.C. § 541. Appellant's Opening Brief at 2.

The bankruptcy trustee argues that this issue was not raised below and hence is not properly before us. We do not agree. We apparently do not have in the appellate record everything filed in the bankruptcy court, but the seventh issue raised in the designation of record on appeal and statement of issues filed in the bankruptcy court was "[d]id the Court err in ruling that a qualified profit sharing trust could be invaded by the Trustee in Bankruptcy?" Appellant's Add. No. 12. The issue was raised, inartfully to be sure, in the district court. In Dr. Harline's brief before the district court he identified the plan as an ERISA plan, I R.Supp. tab 3 at 3; he also

stated that one of the issues was "[d]id the Court err in ruling that a qualified profit sharing trust could be invaded by the Trustee in Bankruptcy?" *Id.* at 1. He argued in that brief that "Congress when it amended the ERISA existing law in 1974 in adopting the Employee Retirement Income Security Act, codified under 29 U.S.C. § 1001, *et seq.*, had the intent to make the defined benefit plans the exclusive property of the beneficiaries under the plan." *Id.* at 8–9. He cited federal tax regulations on the ERISA requirements for spendthrift provisions in qualified plans, *id.* at 9–11, and finished with this plea: "Admittedly some bankruptcy cases have paid little heed to the IRS regulations or laws with respect to the applicability under the Bankruptcy laws. However it is submitted that some credence must be applied to the acts of congress in the overall scheme of federal law." *Id.* at 11.

No doubt Dr. Harline was discouraged in pursuing an ERISA exemption argument because the bankruptcy court in Utah previously had adopted the view of the only four circuit courts that had considered the matter to that date, all of which held that retirement plan interests would be excluded from the bankruptcy estate only if enforceable under state law as spendthrift trusts. *See In re Kerr*, 65 B.R. at 744. We read the district court's opinion as adopting the same view. We hold that the issue of ERISA preemption is properly before us.

### B

ERISA, of course, overrides state law in the area of employee retirement benefits it covers, and its preemption feature has been broadly construed. *See FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). Thus, apart from the Bankruptcy Code there is no doubt that a "qualified" pension or profit sharing plan containing provisions protecting against creditors' claims, as required by ERISA, would override any state law to the contrary.[4] To be "qualified" means the contri-

---

4. "Each pension plan shall provide that benefits    provided under the plan may not be assigned or

butions are tax deductible and neither the contributions nor their earnings are taxed as income to the beneficiary until taken out in accordance with the plan. *See* I.R.C. §§ 401, 402.[5]

The question then is whether Congress intended for ERISA protection to lapse when a beneficiary of such a plan takes bankruptcy. Four circuits have taken the position that Congress intended the exclusionary reference to "applicable nonbankruptcy law" in 11 U.S.C. § 541(c)(2) "as a narrow reference to state 'spendthrift trust' law and not as a broad reference to all other law, both federal and state, including ERISA." *Goff*, 706 F.2d at 577; *see also Graham*, 726 F.2d at 1273; *Lichstrahl*, 750 F.2d at 1490; *Daniel*, 771 F.2d at 1360. These decisions rely upon the following: (1) the general purpose of the Bankruptcy Code to include virtually all of a debtor's property interests in the bankruptcy estate; (2) expressions in the legislative history of § 541(c)(2) focus almost exclusively upon a desire to continue to exclude state-recognized spendthrift trusts; (3) the fact that federal exemption § 522(d)(10)(E) exempts payments under a pension or profit sharing plan "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor"; and (4) the legislative history of § 522(b)(2)(A), exempting property pursuant to "Federal law other than [§ 522(d)(10)(E) ]" does not include interests in ERISA-qualified plans in its illustrative list of examples of exempt properties. *See* 706 F.2d at 581–87.

Recent opinions in three other circuit courts considering the matter, however, have reached the contrary result, and have ruled that qualified ERISA pension and profit sharing plan interests are not assets of the bankruptcy estate under § 541(c)(2).

*See Anderson v. Raine (In re Moore)*, 907 F.2d 1476, 1477 (4th Cir.1990); *Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 601 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *Velis v. Kardanis*, 949 F.2d 78, 83 (3d Cir. 1991). These circuits hold that "[a]n appeal to legislative history is inappropriate here because the language of § 541(c)(2) is clear," relying upon *Burlington Northern R.R. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987), and *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808 n. 3, 109 S.Ct. 1500, 1504 n. 3, 103 L.Ed.2d 891 n. 3 (1989). *Moore*, 907 F.2d at 1478–79. They also view the legislative history as inconclusive. Additionally they rely upon two purposes of ERISA: "to guarantee the security of employees' retirement income" and to ensure "uniform treatment of pension benefits throughout the country." *Id.* at 1479–80; *see also Lucas*, 924 F.2d at 601 ("narrow interpretation" of § 541(c)(2)'s reference to applicable nonbankruptcy law "is also inconsistent with other uses of the identical phrase throughout the Bankruptcy Code, where the phrase is used to refer to the federal as well as state law") (citing *Moore*, 907 F.2d at 1477).

The Ninth Circuit, which embraced the narrow construction in its *Daniel* case, also appears to be having second thoughts. *See John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1166 (9th Cir.1990) ("We recognize a certain incongruity in the notion that only ERISA's anti-alienation provisions offer protection until bankruptcy, and only state spendthrift provisions do so in bankruptcy. The same might be said of the idea that some ERISA plan benefits are protected from creditors before bankruptcy and lose that protection upon bankruptcy. Yet, that is in

---

alienated." 29 U.S.C. § 1056(d)(1). "A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." 26 U.S.C. [I.R.C.] § 401(a)(13). "Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in

equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." Treas.Reg. § 1.403(a)-13(b)(1).

**5.** Although some of ERISA's provisions are codified in labor law sections 29 U.S.C. §§ 1001–1144, the qualification process is delegated to the Internal Revenue Service.

accord with the great weight of authority and is the law of this Circuit."); *see also id.* at 1169–70 (Fletcher, J., concurring). *But see Pitrat v. Garlikov,* 947 F.2d 419, 422–23 (9th Cir.1991) (reaffirming *Daniel* ).

■ We are persuaded by the reasoning of the Third, Fourth and Sixth Circuit opinions, and we join them in holding that a tax-qualified ERISA pension or profit sharing plan is exempt from the bankruptcy estate under § 541(c)(2).[6] We do not perceive an ambiguity in the phrase "applicable nonbankruptcy law" that would permit us to differentiate state from federal law. The phrase on its face is clear and broad. As the Fourth Circuit in *Moore* noted, "when Congress intended to refer to state law, it did so explicitly." *Moore,* 907 F.2d at 1478 (citing examples in 11 U.S.C. §§ 109(c)(2), 522(b)(1) & (2), 523(a)(5)). An interpretation of "applicable nonbankruptcy law" to include both federal and state law is consistent with Congress' use of that same term in other sections of the Bankruptcy Code. In 11 U.S.C. § 101(56), Congress uses the phrase "applicable nonbankruptcy law" to refer to federal laws concerning trade secrets, patents and plant varieties. 11 U.S.C. § 101(56). Sections 108(a), (b) & (c) all use the phrase "applicable nonbankruptcy law," and courts have held that phrase in these subsections refers to federal law. *E.g., Eagle–Picher Indus., Inc. v. United States,* 937 F.2d 625, 639–40 (D.C.Cir.1991) (Federal Tort Claims Act as applicable nonbankruptcy law under § 108(b)); *Brickley v. United States (In re Brickley),* 70 B.R. 113, 115–16 (Bankr. 9th Cir.1986) (IRC statute of limitation, 26 U.S.C. § 6503, as applicable nonbankruptcy law under § 108(c)); *Motor Carrier Audit & Collection Co., a Div. of Delta Traffic Serv., Inc. v. Lighting Prods., Inc.,* 113 B.R. 424, 425–26 (N.D.Ill.1989) (Interstate Commerce Act as applicable nonbankruptcy law under § 108(a)); *Eisenberg v. Feiner (In re Ahead by a Length, Inc.),* 100 B.R. 157, 162 (Bankr.S.D.N.Y.1989) (RICO as applicable nonbankruptcy law under § 108(a)). Yet another example of the use

of "applicable nonbankruptcy law" to mean both federal and state law is 11 U.S.C. § 1125(d) which states in part, "Whether a disclosure statement ... contains adequate information is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation. ..." This subsection's legislative history confirms that the language refers to both federal and state law; more specifically, the language refers to federal and state securities laws. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 121 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5907 ("Subsection (d) relieves the court of the need to follow any otherwise applicable Federal or state law in determining the adequacy of the information contained in the disclosure statement. ..."); H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 409 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6365 ("Subsection (d) excepts the disclosure statements from the requirements of the securities laws (such as section 14 of the 1934 Act and section 5 of the 1933 Act), and from similar State securities laws (blue sky laws, for example)."); *see also* 11 U.S.C.A. § 1125, *Historical and Revision Notes* 528–29 (1979) (quoting Senate and House reports' explanations of subsection (d)); *In re Stanley Hotel, Inc.,* 13 B.R. 926, 931 (Bankr.D.Colo.1981) (Moore, J.) (Section 1125(d) refers, inter alia, to Securities Act of 1933.). We note that "[s]tatutory phrases are not construed in isolation; they must be construed in the context of the statute or act as a whole. Generally, when the same words are used in different sections of the law, they will be given the same meaning." *Barnson v. United States,* 816 F.2d 549, 554 (10th Cir.) (citations omitted), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987).

Finding no ambiguity in the language of § 541(c)(2), resort to legislative history is inappropriate. *See Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991). But even considering the legislative history, which we acknowledge was almost exclusively concerned with preserving state-recognized spendthrift trusts, we

---

**6.** We express no opinion on the federal exemption provisions of 11 U.S.C. § 522(b)(2)(A) and § 522(d)(10)(E), as no argument based upon those sections has been presented in the appeal.

do not find "a clearly expressed legislative intention" to limit the meaning of § 541(c)(2) exclusively to state-recognized spendthrift trusts. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("Absent a clearly expressed legislative intention to the contrary, th[e] language must ordinarily be regarded as conclusive."); *see also Toibb,* 111 S.Ct. at 2200 (quoting *Consumer Prod. Safety Comm'n*). In the legislative history we see an explicit desire to allow state-recognized spendthrift trusts but no explicit rejection of federal law including ERISA. We also are persuaded by the incongruity inherent in the narrower interpretation which would result in ERISA's antialienation provisions trumping state law until bankruptcy, but withdrawing that protection upon bankruptcy unless state law would give it.

The apparent overlap of § 522 and § 541, and confusion in the legislative history, may be the result of the fact the report of the Commission on Bankruptcy Laws of the United States recommended eliminating recognition of the spendthrift trust entirely, except for the amount necessary to support the debtor and dependents. *See Goff,* 706 F.2d at 581 n. 19. This view was incorporated in the Senate version but rejected in the House version that was ultimately enacted. Moreover, we find persuasive the explanation offered by the Third Circuit in *Velis:*

"The argument that if 'applicable non-bankruptcy law' in § 541(c)(2) includes both state and federal law, the exemption provisions of § 522(d)(10)(E) would be superfluous or meaningless overlooks the distinctions between the two sections. Section 522 deals with *distributions* made from a pension plan and distributions which the debtor has a present and immediate right to receive. Even if pension plan assets in the hands of a trustee are beyond the reach of creditors because not a part of the debtor's estate under § 541(c)(2), distributions made from the plan to the debtor would not enjoy such protection, in the absence of exemption under § 522(d)(10)(E)."

*Velis,* 949 F.2d at 82 (citation omitted).

Our position is reenforced by the recent Supreme Court decision in *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), which refused imposition of a constructive trust on a participant's interest in a qualified pension plan for his embezzlement, in the face of another federal statute that arguably would permit such imposition in some circumstances. The Supreme Court relied strongly on ERISA's intended protection of participants' pension benefits:

"Section 206(d) [of ERISA] reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt....

Understandably, there may be a natural distaste for the result we reach here. The statute, however, is clear. In addition, as has been noted above, the malefactor often is not the only beneficiary of the pension."

*Id.* 110 S.Ct. at 687–88 (footnote omitted).

Our construction of § 541(c) harmonizes the Bankruptcy Code with the clear policy and intent of ERISA. *See Shumate v. Patterson,* 943 F.2d 362, 365 (4th Cir.1991) ("[F]ollowing the rule that, whenever possible, statutes should be read in harmony and not in conflict, we interpret these in such a way as to give full effect to both ERISA and the Bankruptcy Code by holding that interests in ERISA-qualified pen-

sion plans are excluded from a bankrupt's estate.") (citation omitted).

### C

Our conclusion that qualified ERISA plans are not assets of the bankruptcy estate still does not resolve the instant appeal. Although Dr. Harline asserts that he is the participant in a "qualified" ERISA plan, there is no certification in the record that his plan was indeed qualified under the law in effect at the time of his bankruptcy. Indeed, the documents in the appellate record raise some doubt of this as the last plan amendment is dated April 2, 1974, before major changes were made in ERISA that required amendments in nearly all plans. The plan documents in the record, which may be incomplete, would seem to permit Dr. Harline to borrow at four percent interest an amount equal to the total value of his interest if he has need. Amendments to the Weber Clinic Profit–Sharing Trust, Respondent's Ex. Add., tab 2 at 3. ERISA, however, limits borrowing by controlling shareholders of a corporation and requires borrowers to pay "reasonable" rates of interest. *See* I.R.C. §§ 401(a)(13)(A), 4975(d)(1)(D), 4975(e)(2)(E); Treas.Reg. § 1.401(a)(13)(d)(2)(iii). ERISA also requires participants to begin taking their retirement funds by age 70½ years, I.R.C. § 401(a)(9)(C); this plan seems to have no compulsory starting date for fund benefits, merely permitting them after age fifty-five years. Third Amendment to the Profit–Sharing Trust of the Weber Clinic, Respondent's Ex.Add., tab 5 at 2. Dr. Harline's brief in the district court infers that the plan has terminated and that he personally, rather than the corporation, is making premium payments on the insurance policies. *See* I R.Supp. tab 3 at 3 ("[t]he debtor-defendant had used his own funds, earned post petition to pay on the premiums due on several of the policies ...").

We can make no determination on the record before us whether or not the plan is indeed currently "qualified" under ERISA. That is an issue to be addressed on remand. We do hold that if the plan is tax-qualified and Dr. Harline has not retired or terminated employment with the employer sponsor of the plan, his interest is excluded from his bankruptcy estate under § 541(c)(2). If the plan is not qualified then it is not protected by ERISA, nor as a spendthrift trust under state law, and no other "non-bankruptcy" law has been cited which might apply.

The summary judgment in favor of the bankruptcy trustee is REVERSED and the case is REMANDED for further proceedings consistent herewith.