## EX PARTE WHITE ET AL.

[78 South. 949, Division B.]

1. WILLS. *Joint power to sell realty.*

Where a will provided that all·property should be kept in tact and managed absolutely by testator's wife and son-in-law who were appointed executors without bond. That the "sale of any real estate as to time and price and parcel is left absolutely with my executors" and that "no accounting shall be required as to receipts and expenditure. In such case the power to sell and convey the real estate could be exercised only by the executors jointly and such power did not survive the death of the wife.

2. WILLS. *Construction.*

In the construction of wills the controlling question in each case is to arrive at the intention of the testator.

APPEAL from the chancery court of Clay county.

HON. A. J. McINTYRE, Chancellor.

Petition by James M. White, surviving executor, and all other parties in interest to construe the will of S. L. Hearn, deceased. From a decree of the chancery court construing the will, all parties appeal.

The facts are fully stated in the opinion of the court.

*Kimbrough & Valentine,* for appellant.

The questions for the court to decide in this case are: (A) was the power to sell lands, as given by the testator, to the executors, a mere naked power to sell at their discretion; or, (B) does the whole will construed in its entirety give to the executors a power to sell coupled with an interest or trust which survives in Jas. M. White?

If the first proposition be true, then the matter is at an end; the power would not survive to the surviving executor and Jas. M. White could not sell and convey land. If the second proposition be true, the

power survives in the surviving executor and Jas. M. White has the right as such surviving executor, to make sales of the non-income-bearing lands of his testator's estate.

Under the common law the rule is well settled that a mere naked power to sell land given to two or more executors or trustees does not in the event of the death of one of the executors survive and it is necessary that all of the executors or trustees join in the execution of the power of it fails. This rule is universally held by all the authorities.

It is equally as well settled law that if the power to sell land be coupled with an interest in the trust, then on the death of one of the executors, the survivor, or survivors may lawfully execute the trust. *Osgood* v. Franklin (N. Y.), 7 Am. Dec. 513; *Wilson* v. *Snow*, 50 L. R. A. (N. S.) 605, and notes; *Bennett* v. *Bennett* (N. Y.), 2 Am. Dec. 281; *Peter* v. *Beverly*, 10 Peters, 565; *Atzinger* v. *Berger*, 50 L. R. A. (N. S.) and authorities cited under Bracket "B" Page 624; *Wallace* v. *Foxwell*, 50 L. R. A. (N. S.) 633, and notes; *Gould* v. *Mathes*, 104 Mass. 283; *Babcock* v. *Caldwell* (Ill.), 137 Am. St. Rep. 304; *Dick* v. *Harby*, 48 S. C. 530; 1 Perry on Trusts (3 Ed.), sec. 414; 20 Ala. 116; *Taylor* v. *Benham*, 5 How. 233, 12 L. Ed. 130.

The question arises when is a power coupled with an interest or trust? In *Wilson* v. *Snow*, 50 L. R. A. (N. S.) 618, 228 U. S. 217, Justice Lamar, rendering the opinion of the court in a case analogous to the one now before the court said; "It is true that the will did not specifically give the executors an interest in the land, nor was the word trust used by the testator. But the power to sell was coupled with the active and continuing duty of managing the property making disposition thereof, and changing investments for the advantage of his family, etc. This was not a mere naked power to sell, but created an interest, or raised a trust

which would preserve the power to sell whether the interest was beneficial to the executors or not.'' For, says the court, it is the possession of the right in the subject over which the power is to be exercised that makes the interest or creates an authority coupled with an interest which survives for the purpose of affecting the object of the power. *Peter* v. *Beverly,* 10 Peters, 536-564, and *Taylor* v. *Benham,* 5 Howard, 233, both are in accord with the finding of Justice LAMAR in the case of *Wilson* v. *Snow.*

In *Osgood* v. *Franklin,* 7 Am. Dec. 518, Chancellor KENT, delivering the opinion of the court, says: ''A trustee invested only with the use and profits of the land for the benefit of another has an interest connected with his power. A testamentary guardian with authority to lease was held to possess a power coupled with an interest and capable of survivorship.'' In the case now before the court Mrs. Hattie P. Hearn, executrix, under the will, was to have sufficient income from the property for her own use and comfort for life. Mrs. Mary Ella White, the wife and children of Jas. M. White, executor, had an undivided interest in the property. The executors were charged with the management of the property, the collector of rents, revenues, dividends, making investments of surplus money, paying taxes, insurance and providing for the wants of those interested out of the revenues of the estate, paying the annuities provided for in the will and finally to divide the estate among the children as they became of age, determining as the testator enjoined them what each child should receive. Certainly under *Wilson* v. *Snow,* and *Osgood* v. *Franklin,* these duties which were placed upon the executors in the case before the court gave to them the possession of a right in the subject over which the power was to be exercised that would create an authority coupled with an interest or trust

that would survive for the purpose of carrying out the objects of the power.

In Peter v. Beverly, 10 Pet. 532, at page 564, 9 L. Ed. 522-535, the court, in speaking of a power coupled with an interest said: "It is not a power coupled with an interest in executors because they may derive a personal benefit from the devise. For a trust will survive though in no way, beneficial to the trustee. It is the possession of the legal estate or a right in the subject over which the powers, to be exercised, that makes the interest in question. And when an executor, guardian, or other trustee is invested with the rents and profits of lands for the sale or use of another it is still an authority coupled with an interest and survives."

In Zebach v. Smith 5 Am. Dec. 532, a case analogous to the case before the court, it was held that the power was coupled with a trust to be executed for the benefit of others, and a single executor did not satisfy the literal expression of the will, yet the power survives and the conveyance was deemed valid.

The suggestion that Jas. M. White, surviving executor, did not have power to sell as developed from the holding of our own court in Bartlett v. Sutherland, 24 Miss. 402, and Clarke v. Hornthal, 47 Miss. 475, 491, 523.

The court will find upon investigation that neither of these cases are in conflict with the law as announced in Osgood v. Franklin, Beverly v. Peeter and Wilson v. Snow. In fact Judge YERGER, who rendered the opinion in Bartlett v. Southerland, bases his opinion upon the reasoning of Chancellor KENT in Osgood v. Franklin. Judge YERGER says: "In the opinion of Chancellor KENT, in the case of Osgood v. Franklin, afterwards affirmed by the supreme court, he states the rule to be, that the intention of the testator is much regarded in the construction of these powers and they are to be construed with greater or less latitude in

reference to that intent." The court then proceeds to
decide the case upon the theory which is made the
turning point of the case that the intention of the
testator as disclosed by the whole will was that a
joint judgment on the part of the executors was intend-
ed where land was sold, for the court says: "Apply-
ing this rule to the construction of this power, our
minds are brought to the conclusion that the testator
looked to a joint execution of it." Considering the
will of S. L. Hearn, testator as a whole, and taking into
consideration the surrounding circumstances, i. e., the
age of Mrs. Hattie P Hearn, the fact that she knew
nothing of her husband's business, took no part in the
management of the same and as he had said to the
witness, Crawford, that while his wife, Mrs. Hattie P.
Hearn, was a great home-maker, she had no business
ability and the further fact that the son-in-law, Jas.,
White had been requested to come to West Point to
live in order to become familiar with said testator's
business and that he did become familiar with every
detail of it before testator's death and that the testator
depended upon his ability to manage the estate and his
implicit confidence in his son-in-law, and the still
further fact, the testator did not enter into the will
that he desired the joint judgment of the executors, all
taken together with the fact that the testator knew
that his wife, Mrs. Hattie P. Hearn, could not possibly
live to see the estate finally administered, shows con-
clusively, the testator did not expect a joint execution
of the entire will and expected and intended that the
power he gave in the will was to survive in Jas. M.
White after the death of Mrs. Hattie P. Hearn. The
intention of the testator in the present case, was that
there should not be a joint judgment or a joint execu-
tion of the power given under the terms of the will but
in the case of *Bartlett* v. *Southerland,* the manifest
intention as cited by the court of the part of the testa-
tor was that there should be a joint execution of the

trust. If the rule of law on which the Southerland case turns be correct then the chancellor's opinion in this case is manifestly wrong. Then, too, in *Bartlett* v. *Southerland,* the court after deciding that the power given by the will in that case was one dependent on the judgment and discretion of the execution proceeded to declare that the statutes of Mississippi, page 458, did not apply to such a case. It will be perceived that *Bartlett* v. *Southerland,* was put on the authority of *Woolbridge* v. *Watkins,* 3 Bibb. (Ky.). That was a case of purely discretionary power not connected with any positive duty. The executors were to sell only if in their judgment it should become necessary. This case came under review in *Coleman* v. *McKinney,* 3 J. Marsh. 246, which was the case of a will which directed the sale of land if the personalty should prove insufficient; the court held this to be a power which would survive or could be exercised by the executor qualifying. The court said it was not to be inferred from the case of *Woolbridge* v. *Watkins,* that the statute only applied to positive and unconditional powers to sell, and that the power and directions to sell in case of deficiency of personalty estate was a positive duty dependent on a contingency only, but which became absolute when the contingency happens. The case of *Bartett* v. *Southerland,* is not to be carried beyond the principle it invokes nor the authority on which it rests. It rests on the Kentucky doctrine and on the case of *Hortwell* v. *Van Buren,* 3 Edw. Ch. 20, which was a direction to sell if in the judgment of the executors it would render a division more easy.

The case of *Clarke* v. *Hornthal,* 47 Miss. 468, is clearly not in point. Judge PEYTON in rendering the court's opinion in this case, page 469, says: "The will is executor's law and he is no more than the testator's representative in all things lawful in the will and he must pursue with reasonable strictness the power conferred upon him by the terms of the will. In this case

a naked power uncoupled with an interest was given by the terms of the will. It is very evident the testator never contemplated that his real esate should be sold to pay debts, etc. '' We think there can be no question that the law as laid down and the facts as stated in *Bartlett* v. *Southerland,* and *Clarke* v. *Hornthal,* does not touch the case here presented to the court but that under the facts as presented in the present case the law as so ably announded by the Great Chancellor KENT in *Osgood* v. *Franklin,* and as announced in the well-thought-out and well-reasoned case of *Wilson* v. *Snow,* applies and the decree of the chancellor should accordingly be reversed.

(It has been suggested by the chancellor and by a number of lawyers who are familiar with the facts in this case that it will be appreciated by the bar if the court in rendering its opinion will make a clear and full announcement of the law touching all questions involved in this case.)

STEVENS, J., delivered the opinion of the court.

In this case an appeal is prosecuted from a decree of the chancery court of Clay county construing the last will and testament of S. L. Hearn, and holding that by the terms of the will the power to sell and convey real estate therein given to Mrs. Hattie P. Hearn, executrix, and James M. White, executor, did not survive after the death of Mrs. Hearn so as to empower James M. White, surviving executor, to sell the lands. The petition to construe the will is filed by all parties in interest. The will is not long, and is here set out in full:

"Be it remembered that I, S. L. Hearn, of the city of West Point, County of Clay, and state of Mississippi, do make this my last will and testament, in the manner following:

"That is to say, I order and direct that all my just debts be paid with all convenient speed.

"It is my will, and I order and direct, that as soon as practicable all stocks and bonds I may own at my death, except bank stock and life insurance bonds, be converted into money, and invested in income-bearing real estate, either lands, or storehouse property in thriving cities.

"I give to my sister, Mrs. Bettie Wade, the little home on which she resides, near McCool, Attala county, Miss., and further will that an annuity of two hundred dollars be paid the said sister, in two equal half-yearly sums, during her natural life. To my sister, Mrs. Allice Parker, now of Texarkana, Texas, I give an annuity of two hundred dollars, to be paid to her, in person, the remainder of her natural life, in two equal half yearly payments.

"I will that fifty dollars per year for ten years be paid to the foreign mission board of the Southern Baptist Convention.

"I will that fifty dollars per year for ten years be paid to the Home Mission Board of the Southern Baptist Convention.

"I will that an annuity of fifty dollars, be paid for ten years to the State Board of the Mississippi Baptist State Convention.

"I give an annuity of fifty dollars for ten years to the Baptist Orphanage located at or near Jackson, Miss.

"I will that all income from the Carry Hearn Hurt Memorial Building at Blue Mountain, Miss., after keeping up repairs, be applied to the education of worthy, poor girls, indefinitely.

"Money derived from insurance on my life, I construe as cash, and direct the investment of it, in real estate as specified in second clause above.

"I will that my daughter, Mary Ella White, and her children and my grandaughter, Carrie Hearn Hurt, share equally in all my estate, both real and personal after the above named bequests are arranged for, and that there be no distinction in providing for the wants,

education and all other advantages of said children.

"I will that after the changes named above my property all be kept intact, and that it be managed absolutely by my wife, Hattie P. Hearn, and my son-in-law, James M. White, whom I hereby appoint my executors without bond.

"The sale of any real estate as to time, price and parcel is left absolutely with my executors.

"No accounting shall be required as to receipts and expenditures. At the majority of each of the children my executors shall determine as to the property best suited to each particular child and the proper time at which to turn over his or her part; always bearing in mind that my will is, all the children shall share equally, and that my daughter, Mary Ella White, share equally with them in the division.

"I will that the income from my property, after providing for the bequests named, be used by my daughter, Mary Ella White, and my wife, Hattie P. Hearn, for their use, benefit, and pleasure and for the benefit and pleasure of all the children named.

"If Carrie Hearn Hurt, my granddaughter named, should die before her majority, I will that her part in my estate be equally divided between the living children of my daughter Mary Ella White. Likewise, the part of any other child, that should die before majority, shall be equally divided between the surviving children.

"My will is that all annuities named take date from the date of probate of this will.

"In witness whereof, I, the above-named testator, have hereunto set my hand and seal, this the 20th day of March, in the year of our Lord, nineteen hundred and five.

　　　　　　　　　　"S. L. HEARN [Seal.]

"Then and there signed, sealed and published by S. L. Hearn, the testator, as and for his last will, in the presence of us, who at his request, in his presence, and

in the presence of each other, have hereunto set our
names as witnesses.

"J. A. CRAWFORD.

"R. H. CHANDLER.

"W. H. VAN LANDINGHAM."

There is considerable testimony in the record, offered
by petitioners, with the view of showing and tending to
show that the testator had great confidence in his son-
in-law, James M. White, whom the testator had in-
duced to give up his position as professor in the A. & M.
College and to move to West Point for the purpose of
familiarizing himself with the testator's business and of
helping to manage the same. Mrs. Hattie P. Hearn and
·James M. White both qualified as executors, and
actively and jointly administered on the estate until the
year 1914, when Mrs. Hearn died, leaving Mr. White
sole surviving executor, who continued to administer,
and is yet performing the duties of his office. The
surviving executor now desires to sell a portion of the
real estate under the terms of the will, but his authority
to do so has been challenged; and it is for this reason
that all parties in interest desire the construction of
the will and an adjudication of the question whether
the power to sell and convey real estate has survived to
Mr. White as sole executor.

In *Bartlett* v. *Sutherland*, 24 Miss. 395, the will under
review provided:

"I further will and desire, that my executors herein-
after named shall be at liberty at any and all times, to
sell or dispose of any part of my estate at private sale,
if in their judgment it will promote the interest of my
estate; and that they shall be at liberty to sell for cash
·or on a credit, without any order of court for that
purpose"—also that the testator appointed his "friends,
Benjamin B. Fritzell, Hough A. H. Lawson, and John
H. Dalton, his executors."

Two of the executors named refused to qualify, and
the sole question presented was whether the surviving

executor had the power to make a private sale of real estate without an order of the probate court. The general rule was there laid down and defined that:

"If the power to sell lands be coupled with an interest in the executors or agents so appointed to execute the trust, then, on the death of one or more of the executors, the survivor or survivors may lawfully execute the power," and that if the terms of the will "confer merely a naked power to sell, and yet the other provisions of the will evince a design in the testator that the lands should be sold at all events, in order to satisfy the whole intent of the will, there also the power survives."

The strict rule of the common law has been changed by statute both in England and in many of our states, and to some extent the subject is now controlled in Mississippi by section 2013, Code of 1906. The foundation for this statute appeared in Hutchinson's Code, page 671. At the time the decision in *Bartlett* v. *Sutherland* was rendered, our court, speaking through Mr. Justice Yerger, held that the statute only applied in its terms to "the sale and conveyance of lands devised to be sold," and has no application whatever where the will does not direct or require that lands be sold. Our court also declared:

"We take the rule to be clear and indisputable that wherever a power to act is conferred upon two or more, and it is dependent upon their judgment whether the act shall be done or not, the power conferred in such case is a special trust or confidence reposed in the judgment of all; and, without the concurrence of all, the power cannot be exercised. . . . The testator evidently contemplated an act of judgment and reflection to be exercised by his executors before this sale should take place, and that confidence was reposed in the whole executors, and not in one. . . . . We can readily conceive that a testator might be willing to repose a power to sell his real estate at private sale to the joint

judgment of all his executors when he would not be willing to trust so great a power to the discretion or judgment of a single one. Believing this to be the true construction of this will, we think the sale made by the acting executor was void, and conferred no title on the purchaser.''

The point was again before the court in *Clark et al.* v. *Hornthal et al.,* 47 Miss. 434. In that case the testator named his wife as sole executrix, but at her death two persons duly appointed were to succeed the widow as executors, with the provision that in event the widow should die without selling certain real estate the executors were authorized to sell it ''upon such terms and conditions as they might deem most beneficial,'' and invest the proceeds to be divided as the other property. The wife died, and one of the persons named in the will as her successor qualified, while the other declined the trust. The survivor sold and conveyed certain of the real estate, which sale the heirs sued to set aside. Judge SIMRALL took no part in the decision, while PEYTON, C. J., and TARBELL, J., differed on the question as to whether the decree appealed from should be reversed, and rendered opinions reflecting opposing views on the legal questions presented. The views expressed by PEYTON, C. J., are in strict accord with the views of the court announced in *Bartlett* v. *Sutherland.* The opinion in the *Bartlett-Sutherland Case* was again reviewed, and by way of argument approved in *Whitfield* v. *Thompson,* 85 Miss. 749, 38 So. 113, in an opinion of the court delivered by Judge EDWARD MAYES as special judge. Judge MAYES, in speaking for the court, said:

''The general rule is that a devise merely that lands may or shall be sold by the executors passes no interest or estate, but only a naked power. The language is: 'I will and direct my executors after two years from my death they may sell, if deemed by them compatible with the interest of my children, the residue of all the lands and real estate I own, or may hereafter acquire,

on such terms as they may think best for my children.'
It is settled law, by decisions in this state, as in others,
that a testator may devise to his executor a power to sell
lands in such manner as to confide to his purely personal
discretion the decision whether a sale shall be made at
all or not. The language which was held in *Montgomery*
v. *Milliken,* 5 Smed. & M. 151 (43 Am. Dec. 507), to
produce that result, was this: 'The Mississippi property
I wish to be sold by my executor at his own discretion.'
The terms employed in *Bartlett* v. *Sutherland,* 24 Miss.
395, were these: 'My executors shall be at liberty at any
and all times to sell or dispose of any part of my estate
at private sale, if in their judgment it will promote the
interest of my estate.' In *Holland* v. *Cruft,* 3 Gray
(Mass.) 162, the words used were: 'I recommend to my
executor that as soon after my decease as he shall think
it expedient  .  .  . he sell,' etc. And in *Ford* v. *Ford,*
70 Wis. 19 (33 N. W. 188, 5 Am. St. Rep. 117), the will
provided that the executors 'shall' at their 'discretion'
sell and invest the proceeds. The language of this will is
express that the executors 'may sell if deemed by them
compatible with the interest of my children'—that is,
of all the children. So far as the terms are concerned in
which the testator has embodied his intention in this
carefully prepared testament, they are much similar to
those employed in the cases above, and quite as clear.
Indeed, it would be rather difficult concisely to refer the
question of sale or no sale more directly to the judgment
of the executors, and the determination by them that
such sale is compatible with the interest of all the
children is made a condition to any power to sell.''

We have given to the present case careful and pro-
tracted consideration; and, as we construe Mr. Hearn's
will, he reposed personal confidence in his wife, Mrs.
Hearn, and his son-in-law, Mr. White, and invested them
with a discretion to be exercised, so far as pertains to
the power to sell real estate, jointly. A construction of
this will is not without difficulty, due somewhat to the

fact that the expressions of the testator are brief and laconic. But the will as a whole did not command or direct that any of his real estate should be sold. On the contrary, it appears that the testator favored real estate investments, and the will expressly directs that his stocks and bonds should be converted into money and the proceeds invested in real estate. The will, therefore, reflects a policy of buying, instead of selling, real estate. Then the entire estate was to be kept intact, and was to "be managed absolutely by my wife, Hattie P. Hearn, and my son-in-law, James M. White, whom I hereby appoint my executors without bond." Utmost confidence is reposed in the persons named, even to the extent of requiring no bond and "no accounting as to receipts and expenditures." Following the clause that the estate should be kept intact and managed absolutely by his wife and Mr. White is the provision that: .

"The sale of any real estate as to time, price, and parcel is left absolutely with my executors."

This provision immediately follows that provision of the will which directs that the estate shall be managed absolutely by the persons named, and that Mrs. Hearn and Mr. White are "hereby appointed my executors without bond." The intention, we think, is to repose confidence and a decretion to be exercised by both. One of the parties named is his beloved wife, but a woman, who, perhaps, was not familiar with the transaction of business. To act with her, Mr. White, a capable and experienced business man, is designated. It is reasonable to suppose that in the exercise of the unlimited power to sell real estate one should act as a check upon the other. And as said by the supreme court of Alabama in *Robinson* v. *Allison*, 74 Ala. 254, when the power to sell "is dependent upon their judgment, or discretion whether the act shall be done or not, the power conferred is a special trust or confidence; its exercise is a matter for the judgment or discretion of all, and without the concurrence of all, the power cannot

be exercised"—referring, as do most of the cases on this point, to *Woolridge* v. *Watkins,* 3 Bibb (Ky.) 349. We are impressed with the view that the power of sale here given was not a power annexed to the office of executor or given *ratione officii.* Neither is this a case where the exercise of the power is mandatory or coupled with a trust. None of the realty is expressly charged with a legacy or annuity. The realty is not expressly devised to the executors in trust for any specially named legatees. On the contrary, the daughter, Mrs. White, and her children and the granddaughter, Carrie Hearn Hurt, are to "share equally in all my estate, both real and personal, after the above-named bequests are arranged for." The real estate is expressly devised to certain named devisees, and any sale of the real estate by the executors would in a way be in derogation of their right to take the real estate as the same is devised by the express terms of the will. On the point argued the authorities are somewhat in conflict.

The controlling question in each case is to arrive at the intention of the testator. It would have been an easy matter in the present case for the testator to have conferred the power upon the survivor by the express terms of the will itself. If he had directed that any of his lands should be sold, then the misfortune of either executor failing to qualify or dying before the execution of the trust would be taken care of by our statute. If there is to be a sale of real estate at all events, then the statute sees to it that the purposes of the testator are not thwarted by misfortune or accident. But if there is to be no sale at all events, but only at the discretion of the two persons named as executors, then it is safe to require that this discretion be exercised jointly. It may be that a more liberal view is taken by the supreme court of the United States in *Wilson* v. *Snow* (U. S.), 228 U. S. 217, 33 Sup. Ct. 487, 57 L. Ed. 807, 50 L. R. A. (N. S.) 604, but the safer view is the line outlined by our court in *Bartlett* v. *Sutherland, supra,*

and we see no occasion to overrule or modify this early declaration of our own court. As stated by Mr. Justice LAMAR in *Wilson* v. *Snow*:

"It is unnecessary to attempt to reconcile the authorities."

Many cases are collated in the L. R. A. case note to *Wilson* v. *Snow*, and also in the case note to *Atzinger* v. *Berger*, 151 Ky. 800, 152 S. W. 971, 50 L. R. A. (N. S.) 622, and likewise in the note to *Wallace* v. *Foxwell*, 250 Ill. 616, 95 N. E. 985, 50 L. R. A. (N. S.) 632. A fair test could be applied to the present case by asking the question whether an adminstrator with the will annexed could here exercise the power to sell in event both Mrs. Hearn and Mr. White had declined the trust or or failed to qualify. The very fact that the testator named his wife as his executrix indicates, we think, a purpose to give her a voice in the management and control of the estate, and, in the absence of any contrary indication in the will, to rely upon her judgment as to any private sale of real estate. It will not do to say that the power to sell survives in like manner as the power to retain possession or manage. The power given by this will to sell is not a power usually incident to the duties of an executor. There is no question here presented about selling real estate for the purpose of paying debts or providing for creditors. We are asked to declare that the surviving executor has power to sell and convey real estate for the purpose of changing the investment or for any other purpose which might appeal to the judgment and discretion of the executor. In the exercise of such power, the executor does not look to the probate laws or statutory provisions governing executors and administrators, but he must look to the power expressly devolved by the terms of the will. The learned chancellor, we think, reached the right result in this case, and his decree should be affirmed.

*Affirmed.*