BATSON *v.* HUMBLE OIL & REF. CO., et al.

Feb. 18, 1952.

No. 38194 (56 So. (2d) 828)

Ben Stevens and L. Barrett Jones, for appellant.

Joe A. Thompson, Fleet C. Hathorn, Heidelberg & Roberts, and Rawls & Hathorn, for appellees.

Roberds, J.

On October 3, 1940, the following instrument was executed to N. Batson, the appellant:

"In consideration of One Dollar and other valuable consideration I convey and quitclaim to N. Batson of Hattiesburg, Mississippi, all right, title and interest of the Estate of Matthew Slush, deceased, in and to all lands which were owned by said decedent before their sale for taxes, situate in the County of Marion and any other county or counties in South Mississippi, being thereunto duly authorized by the Last Will and Testament of Matthew Slush, deceased.

"Witness my hand this 3rd day of October, 1940.

"/s/ Mabelle Tennant (Mabelle Tennant)

"Administratrix d.b.n.w.w.a. of the
Estate of Matthew Slush, Deceased."

Two witnesses attested its execution and it was duly acknowledged in Wayne County, Michigan. Batson filed the bill in this cause, asserting ownership in himself to 120 acres of land, specifically described in the bill, located in Marion County, Mississippi, title to which he says was conveyed to him by said instrument, praying for a decree cancelling and removing all claims of respondents to said land as a cloud upon his title.

Respondents, by general demurrer, asserted that this instrument did not convey any title to Batson, setting up seven grounds in support of the contention, one of which being that the grantor in the deed had no power or authority to convey title without an order of the court

empowering her so to do. The chancellor sustained that contention, among others, and Batson appeals.

It is claimed by appellees that the bill, with its exhibits, shows that the testator conferred upon the three executors named in the will the power of sale of his real estate because of the personal trust and confidence he had in them individually, and that no such power vested in a subsequent administratrix de bonis non with the will annexed. The rule is well established ██ that where such power is conferred by a testator because of personal trust and confidence in the named executors neither the surviving executor, where more than one is designated, nor an administrator with the will annexed, where the named executors fail to qualify, die or resign, can convey title to the real property of testator without a valid order of court authorizing and empowering the sale and conveyance. Ex parte White, et al., 118 Miss. 15, 78 So. 949, L. R. A. 1918E, 1065; 21 Am. Jur. pp. 780 and 781, Sections 712 and 713; Anno. 116 A. L. R., p. 178. Especially is the power lacking under such circumstances where an administrator with the will annexed is appointed by the court and the attempt to convey is not by one or more of the surviving designated executors. 21 Am. Jur., p. 781, Sec. 713.

In the White case, supra [118 Miss. 15, 78 So. 951] this Court said "The controlling question in each case is to arrive at the intention of the testator." The rule is the same in Michigan, the domicile of the testator in this case, as in Mississippi, the situs of the land involved. Bennett v. Chapin, 77 Mich. 526, 43 N. W. 893, 7 L. R. A. 377. Therefore we need not determine whether the question is controlled by the Mississippi or the Michigan law. Nor does the Mississippi statute, Section 518, Miss. Code 1942, change the rule in this state. Bartlett v. Sutherland, 24 Miss. 395; Ex parte White, supra. The difficulty is not in determining the legal rule but in its application to the circumstances of particular cases. We now try to do that in this case.

Matthew Slush executed his will January 18, 1923, in Mount Clements, Macomb County, Michigan, of which city and county he was then a resident. It consisted of eighteen items. Apparently, he was then a man of much wealth. He provided many bequests and legacies of large sums to various beneficiaries. References to and dispositions of his properties show them to have been of various kinds, much of it being real estate.

The will consisted of three general plans: First, the administration of the estate by his executors and payment by them of certain bequests and legacies; second, the then delivery by his executors of the remaining properties to his wife for her use and benefit during her natural life, and, third, the handling of the estate thereafter by the Security Trust Company of Detroit, Michigan, as trustee, for the benefit mainly of Ruth Slush, his daughter. The sum provided for the daughter was $150,000. He named as executors Mary J. Slush, his wife, Harry Slush, a nephew, and Henry O. Chapaton, apparently a close personal friend and perhaps a business adviser. He relieved these executors from the necessity of giving bond. To further show his confidence in Chapaton he nominated him as one of the trustees to purchase, lay out and establish a public park in Mount Clements, for which purpose he set aside $10,000.00 in the will. Specifically, as further demonstrating the personal trust and confidence he had in the executors, he provided, "I wish and direct that the management of whatever estate I may leave be continued with said executors so long as may be needed by them to complete the ordinary administration of said estate * * * and to accomplish without sacrifice the conversion of my holdings in timber lands and railroad stocks and bonds into investments of the kind hereinafter specified as desired by me * * . * ", and that, after administering the estate and payment of specified legacies, the remainder of the estate be delivered to his wife for her use and benefit during her

natural life. In the third item he conferred the following power and discretion upon the executors: ''I hereby give to my executors during their administration * * * the full power to sell, transfer and convey at such times, in such parcels, and on such terms as shall seem best to them for the interests of the beneficiaries of this will, any and all of the real estate of which I may die seized, and as well any they may have purchased by way of investment under the terms hereof—the proceeds of such sale or sales to be invested by them in bonds, mortgages or other real estate, as more particularly hereinafter specified''. He then directed the executors, during the time they handled the estate, to invest his money in, first, mortgage railroad bonds, or first class municipal or United States Government bonds, or in first real estate mortgages, or in ''improved productive real estate centrally located'', evidently leaving to their judgment and discretion the type of specified investment they thought best for the estate. He furthermore empowered the executors, if in their judgment it was best for the estate, to * * * invest funds in either real or personal estate not of the kinds above designated, * * *''.

 It is at once seen, we think, from the foregoing that the testator had the greatest confidence in the personal honesty, integrity, and business judgment of the three persons he named as executors of his will. He selected them as executors, and conferred upon them extensive powers, including the power to convey real property, because of that individual trust and confidence. It is true that before his death in 1929 he added three codicils to this will, but none of them made any change in the personnel of the executors or material change in their powers.

 The bill states that Slush departed this life in the State of Michigan; that the will was probated there and was also filed in Marion County, Mississippi. However, it does not say whether the original executors did

or did not qualify and act as such in the State of Michigan, or, if so, whether they had died or resigned. Nor is there any showing that any executor or administrator was appointed in the State of Mississippi. The bill does state that Mabelle Tennant, grantor in the deed of October 3, 1940, was then the qualified and acting administratrix de bonis non with the will annexed of the estate of Matthew Slush, in Michigan. In other words, the record throws no light upon the circumstances under which Mabelle Tennant was appointed, or the reasons why she was selected. The date is not even stated. It will be noted the purported deed was executed eleven years after the death of the testator. In any event no reason or fact appears in this record justifying the conclusion that Mabelle Tennant was invested with the powers and authority testator conferred upon the original executors to convey title to his real property. And, aside from the power to execute the deed, careful examination of it indicates that it is of very doubtful benefit to the estate. It recites a consideration of one dollar and ''other valuable consideration'', and the bill fails to state what the consideration was. In addition, it conveys all land of the estate in Marion County which was sold for taxes. The bill fails to disclose the amount of land supposedly conveyed by the deed in Marion County. Also, this Court has held that the tax sale for state and county taxes in Marion County made in 1931 was void; therefore, in legal effect, there was no tax sale. Again, the instrument purports to sell all land of the Slush estate, not only in Marion County, but in ''any other county or counties in South Mississippi''—a kind of wholesale conveyance for an apparent nominal consideration, the total acreage not being shown. All of this illustrates the wisdom of full disclosure to the administering court of all facts and circumstances surrounding this transaction, and procurement of an order for sale, and the unwisdom of permitting this administratrix to

possess the power to convey at will and pleasure the real property of the estate.

Affirmed.

McGehee, C. J., and Alexander, Arrington and Ethridge, JJ., concur.