John J. Dillon, S.
Certain of the objections filed to the final account of the executors relate to the sale of a drugstore for the sum of $20,750, which is claimed to be an amount less than the price for which such drug business should have been sold. Related objections have been filed to the payment of a judgment for brokerage commissions in connection with such drug business.
The testator died on June 11, 1953 and letters testamentary were issued on June 30, 1953 to both named executors, one of whom is an attorney and the other a practicing physician. Although both were also named as trustees, only the executor-attorney qualified as a trustee.
Prior to his death the decedent had operated a drugstore business in Manhattan. At the time of his death the decedent was a tenant of said premises under a lease for a period of 10 years which expired on November 30, 1960. Upon their qualification the executors continued the operation of the drugstore business pending a sale of such business. Allegedly, upon the advice of an attorney, stated to have been experienced in the sale and purchase of drugstores, the executors determined not to advertise the business for sale or to place it with brokers for sale, on the ground that either course might be construed as indicating a distress s'ale, and bring a lower price than otherwise would be received. Either or both of the executors communicated with several prospective purchasers and the original asking price of $30,000 was later reduced to $25,000. On or about July 15, 1953, both executors were negotiating with two prospective joint purchasers who ultimately purchased the business but who on that date refused to pay the asking price of $25,000 and stated that they would investigate the business more carefully before submitting a counteroffer. Before he left for vacation on July 20, 1953, the executor-physician told his coexecutor to obtain the best possible price from such prospective purchasers, following which on July 23, 1953, the executor-attorney executed a contract for the sale of the drug *696 store business for the sum of $18,750 during the absence of his coexecutor on vacation. The sales price had been communicated to the adult beneficiaries who initially offered no objections to such sale. The prospective purchasers were allowed to enter into the store on July 23, 1953, the date fixed for the closing and the purchasers became entitled to receive all receipts (which were retained by the executors, but credited against the purchase price), and the purchasers assumed the payment of all liabilities, including an obligation for merchandise ordered before July 23, 1953, and received thereafter but prior to July 26, 1953, in the amount of $1,000.
On July 26, 1953 at the request of the executor-attorney, an inventory was taken by Ketchum and Co. on the basis of cost or market value whichever was higher. At or about the same time a telephone call was received from the attorney for the widow of testator, who had been retained because of her dissatisfaction with the sales price. On July 30, 1953, the date set for the closing of title under the existing contract, the closing was adjourned to August 13, 1953 for the reason that the executor-physician had not returned from his vacation, and the executors therefore were not prepared to close title. A conference was held at the same date at which the executor-attorney, the contract purchasers, and their attorney, and the attorney for the widow were present. At this conference counsel for the widow took the position that the contract was invalid because it had been signed by only one executor.
About the same time, on July 27 or 28, 1953, the pharmacist who had been employed by decedent and whose services had been continued by the executors was discharged at the insistence of the widow of testator, as a result of which the purchasers under the contract were the only registered pharmacists in the store thereafter. Not being satisfied with the cost evaluation of the inventory made by Ketchum and Co. as against a bulk sale evaluation, the executor-attorney on July 29, 1953 retained the firm of H. Schechtman and Co., Inc. to appraise the business, and an appraisal was made on July 30, 1953. Its value was appraised for the amount of $8,000 over and above the face value of the inventory as certified by Ketchum and Co. On August 3, 1953 the executor-attorney telephoned the appraiser and in a conversation relating to the appraisal was asked by the appraiser if he would consider a purchaser for $27,000, although there is a dispute as to whether the appraiser was then informed by the executor-attorney that the store had been sold or that a contract was already in existence.
*697 Letters written by the executor-attorney to counsel for the widow dated July 31, 1953 and August 4, 1953 clearly show that despite the existing contract, the writer was prepared to consider any offer for the drugstore business at a price and upon terms more favorable than provided for in the existing contract.
On August 13, 1953, the adjourned date of the closing, the attorney-executor requested a further adjournment of the closing so that the necessary papers could be executed by his coexecutor. The purchasers refused to consent to a further adjournment and thereupon produced two certified checks and made a tender of the purchase price and a demand for the performance of the contract. The sellers’ request for a further postponement was declined, and the purchasers’ attorney thereupon served the attorney-executor with a summons with notice for $25,000 in an action for a specific performance. On the same day both executors appeared at the office of the attorney for the widow at a conference where the person who had made the appraisal on behalf of H. Sehechtman and Co., Inc. was also present. A sale to the purchaser produced by the broker was discussed, although the executor-attorney testified that any such sale was stated to be subject to the nonperformance by the purchasers of the then existing contract.
On or about August 13, 1953, on the claim by the executors that the drugstore business was worth a greater amount than called for in the contract price, the purchasers increased their offer from $18,750 to $20,750 and title was closed on August 14, 1953.
The rule is well settled that a fiduciary ‘ ‘ is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs.” (See opinion of Woodruff, J., in King v. Talbot, 40 N. Y. 76, 85-86.) In ascertaining whether the 'acts of a fiduciary have been prudent within the meaning of the rule the courts must ‘ ‘ look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place ” (Purdy v. Lynch, 145 N. Y. 462, 475-476); for “ A wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by.” (Costello v. Costello, 209 N. Y. 252, 262.) “ Trustees acting honestly, with ordinary prudence and within the limits of their trust are not liable for mere errors of judgment ” (Matter of Chapman, 2 Ch. 763, 776) for a fiduciary should not be held liable ‘ ‘ for unfortunate results which he could not be expected to foresee and was powerless to prevent.” (Ormiston v. Olcott, 84 N. Y. 339, 347.)
*698 The court determines that the executors failed to exercise due care in connection with the sale of such drugstore business. Although the executors were continuing the business of decedent under difficult and trying circumstances and sustaining a loss of $200 weekly, and all of the circumstances rendered advisable an expeditious sale, it appears that the business could have been sold within the same period at a price higher than the sum of $20,750 ultimately obtained. The evidence establishes that the contract was executed without having first obtained an appraisal or without first having taken a physical inventory, the appraisal first having been made and such inventory first taken after the contract had been executed.
The executors correctly concluded that the contract of sale' was valid even though signed by only one of the two executors. (See Geyer v. Snyder, 140 N. Y. 394; Pearse v. National Lead Co., 162 App. Div. 766.) However, the direction by one of th© executors to his coexecutor to sell at the best possible price was given without adequate information as to the value of the inventory or as to the value of the drug business. Moreover, such direction was given by one executor and acted upon by the other without adequate efforts by either executor to obtain a purchaser at a price approximating the fair value of the drug business. Recognition of their failure to obtain an adequate price is implicit in their later efforts in inducing the purchasers under the signed contract to increase the purchase price by $2,000. The agreement by the purchasers to increase the purchase price by $2,000 allegedly occurred on August 12, 1953 as the result of a conference held on the preceding day but after the time when the executors knew or should have known that a higher price was obtainable.
. At the conference held on or about August 11, 1953, at which the widow and her attorney were also present, her attorney stated that the contract was invalid, having been executed by only one of the two executors, and the executors took the position that the contract was valid and that the signature of only one executor was necessary, but it was at this conference' that arrangements were made to meet on the following day the purchaser produced by the broker. Moreover, although on the admitted testimony of one of the executors that the inventory value was $18,000 or $19,000, the contract executed by him initially had provided for a sale price of only $18,750.
Any dispute as to the evaluation of the business rests mainly on the testimony of an appraiser employed by the executors shortly prior to the trial. And although this appraiser testified that as of July, 1953, the drug business had a value of $18,000 *699 and a ‘ potential ’ ’ value of $20,000, the court finds that as of the date of the sale the drugstore business was reasonably worth the sum of $26,000 and that in the exercise of due care and reasonable prudence such drug business could have been sold for this amount on or before August 14, 1953.
Where a fiduciary is authorized to sell trust property and sells it for less than its fair value, he is chargeable with the difference between its fair value and the amount which he receives on the sale, since this is the loss which results from the breach of trust. (See 2 Scott on Trusts [2d ed.], § 205, p. 1525.) The sale of such drug business for the sum of $26,000 less brokerage commissions at the established rate of 10% of such sales price, would have produced a sales price, less commissions of $23,400. In arriving at the fair value of the drug business at the time of sale, the court has also considered that the inventory taken on July 26,1953 included items on order costing $1,000 which had been delivered a day or two prior to the date of such inventory; but this amount is not deductible in computing the loss. The court accordingly determines that a loss of $2,650 was sustained in connection with the sale of such drug business and the objections relating to such sale are sustained in this amount with interest thereon at the rate of 4% from August 14,1953.
In connection with the amount paid on the judgment obtained against the executors by H. Schechtman and Co., Inc. for brokerage commissions, it appears that such judgment was recovered by such broker in a Municipal Court of the City of New York in the amount of $3,523.98. This recovery was necessarily based upon a finding that the plaintiff in that action had been employed by the executors, or that its employment as a broker had been ratified by such executors, and that such broker had produced a buyer, ready, willing and able to buy the premises for the sum of $27,000, upon terms satisfactory to the sellers. The contention that the widow of testator fomented the lawsuit for broker’s commissions in a spirit of vindictiveness is overruled and dismissed. Although she, as well as her attorney, were participants in the action, the evidence failed to establish that either acted improperly in connection with such action for brokerage commissions. It was the attorney-executor who had retained H. Schechtman and Co., Inc. to make the appraisal and the executors’ liability for brokerage commissions was a result of the executors ’ conduct in employing or ratifying the employment as a broker of the firm which very shortly before had been employed by one of the executors tí» make the appraisal. *700 The executors accordingly are surcharged in the amount of the judgment with accrued interest.
As an incident to such action for brokerage commissions the executors retained counsel to defend the action and to appeal from the judgment and thereby incurred counsel fees aggregating $700 and disbursements totaling $257.52. Although the retention of such legal services may have been necessary in an attempt to exculpate the executors from any personal liability, such expenses may not be defrayed from estate assets. A legal representative may disburse the funds of the estate for purposes authorized by law, but may not bind the estate by an executorial contract and thereby create a liability not founded upon a contract or obligation of the testator. (Barry v. Lambert, 98 N. Y. 300; Ferrin v. Myrick, 41 N. Y. 315.) Although as between the executors and the person with whom the contract is made, the latter may rely on the contract, the beneficiaries are not concluded by the executors ’ act, but the priority of the charge and liability of the estate therefor must be determined upon an accounting by the executors. (See O’Brien v. Jackson, 167 N. Y. 31.) The executors are accordingly surcharged in the amount of $957.52, with interest thereon at the rate of 4% from the date of payment.
In behalf of one of the executors, it is urged that even if the executor-attorney was imprudent, his coexecutor should not be held liable in the absence of knowledge, assent or notice,- actual or constructive, of such act or omission on the part of his co executor. Even if it be concluded that the act of one of the executors in executing the initial contract for the sale of the drug business was not binding on the other executor, and as both executors believed a binding contract had been executed by the attorney-executor, both co executors must, nevertheless, be held liable. The contract of sale executed by a single coexecutor for a price of $18,750 was not consummated. Ultimately both executors executed a contract for the sale of such business to the same purchasers for the increased price of $20,750. Both executors were therefore active participants in the negotiations for and the execution of the contract which was ultimately consummated.
The same conclusion must follow with respect to the judgment for brokerage commissions and the legal expenses incident to the defense of such action. Even assuming that the broker was employed by the attorney-executor without the knowledge or consent of his coexecutor and before the latter’s return from vacation, ratification by the coexecutor must be inferred from *701 his presence at the meeting where the question of a sale to another purchaser at a price of $27,000 or $8,000 above the admitted inventory was discussed.
The remaining objections interposed relate to the amount paid for legal services and to the amount paid for the services of an accountant. The court determines that the amounts paid for legal services, excluding those paid to other counsel in defense of the action for brokerage commissions, are fair and reasonable and the objections relating to such payments for legal services are overruled and dismissed. The services for which such payments were made included legal services in addition to those which normally would be required.
The executors were justified in continuing the services of the accountant employed by decedent prior to his death and such services were necessary by reason of decedent’s Federal and State income tax liability, as well as by reason of the continuation and sale of the drug business by the executors. The court further determines that the amount paid for such accounting services is fair and reasonable and the objections relating to such payment are overruled and dismissed.
Objection number 11 interposed by the widow of testator relating to weekly payments made to her and requesting that such payments not be set off as exempt property under section 200 of the Surrogate’s Court Act is overruled and dismissed. The evidence failed to establish that such payments were made on account of salary or that objectant was employed by the executors during the continuance of the drug business by the executors until the date of sale. The objection to the award of commissions to the executors is likewise overruled and dismissed since there was no evidence that the executors acted in bad faith. (Matter of Hildreth, 274 App. Div. 611; Matter of Frame, 245 App. Div. 675.)
Settle decree.