234 So.2d 616 (1970)
James W. CARTER
v.
Charles HURST et al.
No. 45749.
Supreme Court of Mississippi.
April 20, 1970.
*617 John P. Fox, Houston, Watkins & Eager, William E. Suddath, Jr., Jackson, for appellant.
James S. Gore, Houston, Tubb & Stevens, West Point, for appellees.
ETHRIDGE, Chief Justice:
James W. Carter, complainant-appellant, brought this action against Charles Hurst and E.E. Noland, defendants-appellees, in the Chancery Court of the First Judicial District of Chickasaw County, for specific performance of a contract for the sale of land, which was signed by only one of two co-executors. The other had not authorized it, but later joined in signing a deed to the land which was transmitted to their own attorney. Before delivery, they instructed him not to deliver the deed. Affirming the trial court, we hold that the co-executor did not thereby ratify the sale contract, and that specific performance was correctly denied.
Modess Bridger of Houston, Mississippi, died testate on January 29, 1963, owning a seventy-acre tract of land which is the subject of this litigation. The will specifically disinherited her heirs-at-law and devised all of her estate to the Assemblies of God, Inc., with the directive that one-third of the proceeds of the estate be allocated "for the radio ministry of Rev. Charles Hurst." The will then appointed Charles Hurst and E.E. Noland, Mississippi Secretary of the Assemblies of God, as the executors without bond, and empowered and directed them to sell all the testatrix's properties, both real and personal, at public or private sale, without precedent court authorization. Hurst and Noland presented the will for probate and were appointed and qualified as executors.
On January 7, 1964, Hurst executed a contract for sale of the subject lands with James Carter:
On this date the undersigned Rev. Charles Hurst has agreed to sell on behalf of the Assemblies of God, Incorporated, and the undersigned James W. Carter has agreed to buy for the purchase price of Three Thousand Eight Hundred Dollars ($3,800.00) the following described real property. * * *
Armis E. Hawkins, attorney-at-law, Houston, Mississippi will prepare the necessary deed and send it to the Seller for proper execution, and in said deed the undersigned James W. Carter and his wife Opal I. Carter will be named as Grantees, and upon receipt by Armis E. Hawkins of the sum of Three Thousand Eight Hundred Dollars ($3,800.00) cash or cashier's check payable to the undersigned Rev. Charles Hurst and Rev. E.E. Noland * * * he is authorized to deliver the deed to the purchaser.
Noland was not a party to this transaction, did not authorize it, and knew nothing of it at the time.
Pursuant to the contract of sale, attorney Hawkins prepared a deed and by letter of January 8, 1964, transmitted it to Hurst for execution by Hurst and Noland.
Enclosed is the warranty deed unto Mr. and Mrs. James Carter, as was agreed upon in my office yesterday. I believe *618 this instrument expresses the understanding and agreement which you and Mr. Carter had in reference to the sale of this property.
When you and Rev. Noland have executed this deed, if you will mail it to me, I will secure from Mr. Carter the sum of $3,800.00, either in cash or by a cashier's check payable to you and Rev. Noland. Upon receipt of this check, or cash, as the case may be, I will deliver the deed.
The deed was signed by Hurst and Noland and returned to Hawkins sometime before January 21, 1964.
Meanwhile, Carter had employed H.B. Abernathy, an attorney, to check the title to the land, and Abernathy had recommended that, for the purchaser's security, the Bridger will should be probated in solemn form, as distinguished from the common-form proceeding then in progress. Abernathy also had raised questions concerning a precedent reservation of minerals. Hawkins apprised Hurst of these developments in a letter dated January 14, 1964, and the next day, Hurst, his ardor for the transaction considerably dampened, wrote Carter:
I received word today from Mr. Hawkins that you have called Mr. Abernathy into the picture, which of course is your right to do so. However, from what Mr. Hawkins tells me the entrance into the picture of Mr. Abernathy has greatly complicated things.
I signed the agreement, and the deed in good faith to let you folks have the land, but now it appears that since Mr. Abernathy is laying down some additional provisions that will become more complex and involve more expense I don't know whether we will be able to go thru with it. I have always tried to keep my word, but since more expense will be involved I must say that it appears now that we will not be able to let you have the land.
Brother Carter, I have already built a name for being honest, and I hope you will understand my position.
I will say this, if you had not called Mr. Abernathy into the case you no doubt would already have the deed to the property. We must meet God, please don't feel hard at me for having to back down on this sale.
On January 17, 1964, Hurst wrote Hawkins that the Carter deal was at an end. He ascribed as a reason the title requirements of Abernathy.
Following receipt of Hurst's letter, Carter engaged the services of J. May, a real estate agent, and had May contact Hurst in an effort to preserve the deal. May, on Carter's behalf, offered to finance solemn-form probate and also to increase by $200 the consideration for the sale. On January 21, 1964, Hurst responded to May's overtures:
I talked to Mr. May on the phone, and he has possibly already told you about our conversation * * *
I am deeply disturbed that this thing has got into such a mess. The State Secretary in Meridian came to see me last Friday, and he said I should never have made an agreement with you without talking to him. However, he did sign the deed an Mr. Hawkins has it, an it would have been delivered to you if you had not gone to Mr. Abernathy.
Mr. May told me that you would be willing to pay $4,000 for the land, an also you would pay the extra expense of having to go thru the "Solemn Form" of settlement as Mr. Abernathy requests * * * Please write an tell me if you will be willing to pay this extra expense of going into the courts. If you are willing to do all that Mr. May told me on the Phone please write me and I *619 will see if anything can be done. I will have to get the agreement of the Secretary of the Mississippi District of the Assemblies of God, Rev. E.E. Noland in Meridian. He is on the will with me, he has as much say so as I do.
Carter answered neither this nor the previous letter from Hurst. Instead, on January 25, 1964, accompanied by his wife and May, whom he wanted present as witnesses, Carter appeared at Hawkins' office, unconditionally tendered the $3800 consideration specified in the contract for sale, and demanded the deed in Hawkins' possession. Following Hurst's and Noland's directive, Hawkins declined to deliver it.
Shortly thereafter Carter retained Gilder, an attorney, to enforce the contract of sale. Gilder did not immediately file suit on the contract, however, but instead elected to proceed toward Carter's goal circuitously. He contacted Mrs. Ella Bridger Baker and Joe Hollin Bridger, heirs-at-law of Modess Bridger, and invited them to contest Miss Bridger's will. They consented and entered into an agreement with Carter to sell him the seventy-acre tract should the proposed litigation prove fruitful. The heirs then retained their own representation and commenced the will contest, which was finally concluded adversely to them on June 28, 1968.
On July 6, 1968, Hurst and Noland petitioned the Chancery Court of Chickasaw County for authority to sell a block of land from the Bridger estate, which block included the seventy-acre parcel sought by Carter. On August 17, 1968, Carter brought this action for specific performance of the contract.
The chancery court ruled that both Hurst and Noland were properly qualified as executors under the Bridger will and that, consequently, joint action by them was essential in any matter affecting the Bridger estate. Since Noland never executed the contract for sale, the court adjudged the contract to be unenforceable, despite the fact that Noland subsequently signed the deed contemplated by it, and the attorney for the executors had it in his possession. The chancellor further found that by encouraging other litigation and awaiting its outcome before bringing this action, Carter was guilty of laches.
On this appeal, Carter does not challenge the chancery court's ruling as to the necessity of joint action by co-executors, but argues that, in essence, there was joint action. By signing the deed contemplated by the contract of sale, urges Carter, co-executor Noland ratified the contract and thereby breathed life into it.
The contract signed by Carter and Hurst on January 7, 1964, was invalid and unenforceable as an obligation of the co-executors. Noland knew nothing of its execution. He had not authorized Hurst to sign it for him. Nor did the contract purport to be signed by Hurst for himself and for Noland as joint executors. In fact, the contract itself is somewhat ambiguous on the capacity in which Hurst signed it. It states that Hurst agreed to sell "on behalf of the Assemblies of God, Inc.," and that upon receipt by Attorney Hawkins of the consideration "payable to the undersigned Charles Hurst and Rev. E.E. Noland, executors under the last will and testament of Modess Bridger," Hawkins was authorized to deliver the deed to the purchaser. At any rate, the power of sale conferred in this will is in the nature of a trust, and all the executors who qualify must join in execution of the power. Batson v. Humble Oil & Refining Co., 213 Miss. 340, 56 So.2d 828 (1952); Bank of Port Gibson v. Baugh, 17 Miss. (9 Smedes & M.) 290 (1848); see 31 Am.Jur.2d Executors and Administrators § 457 (1967).
Assuming but not deciding that an executor can execute a contract for sale of land under a will and also bind his co-executor who has orally authorized it, the *620 instant contract at best is ambiguous in this respect. Hurst purported to sign it on behalf of the Assemblies of God, Inc., but not on behalf of his co-executor Noland.
Restatement of Agency 2d section 82 (1958) defines ratification as follows:
Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.
Accordingly, there was no ratification, since prior to signing of the deed by Noland and Hurst, Hurst's execution of the contract was not done or professedly done on the account of Noland. See W. Seavey, Law of Agency, §§ 32-38 (1964). Roe v. Smith, 42 Misc. 89, 85 N.Y.S. 527 (1903), cited by appellant, involved an oral agreement to sell land, entered into by both executors before the contract was reduced to writing. The nonsigning executor had expressly authorized the other to sign the contract for him. Cf. In re Cohen's Will, 13 Misc.2d 694, 177 N.Y.S.2d 344 (1958) (where only executor who had qualified signed contract).
Further, there was no delivery of the deed to Carter. Hawkins was not an independent escrow agent; he was the attorney for defendants. In this instance, Hawkins was the depositary solely for the grantors, and not the grantee. His authority was revoked by his clients, the grantors, before Carter made a tender of the consideration and demanded the deed. Although a grantor's attorney may act as a depositary in escrow if it involves no violation of duty to the principal and he acts as an individual and not as agent, these qualifications of the general rule are not applicable in the instant case. 28 Am.Jur.2d Escrow § 13 (1966).
Moreover, in suits for specific performance, a weaker case is sufficient to defeat the action. Specific performance is not a matter of right but of sound legal discretion. Pickett v. Boutwell, 240 Miss. 18, 125 So.2d 822 (1961). That discretion was properly exercised by the trial court in this instance.
Affirmed.
JONES, PATTERSON, INZER and ROBERTSON, JJ., concur.